Exhibit A



STRATEGIC
FUNDING

| Contract# 17885 |
| Sales Partner: Capital Solutions / John Aitkens |

## MERCHANT CASH ADVANCE AGREEMENT

Agreement dated    January    11    2012    between Strategic Funding Source Inc. ("SFSI") and the merchant listed below ("the Merchant").
              (Month)   (Day)   (Year)

### MERCHANT INFORMATION

Merchant's Legal Name: b2 Salon LLC

D/B/A: b2 Salon (South Broad)                                        State of Incorporation/organization: N

Type of entity: ( ) Corporation ( X ) Limited Liability Company ( ) Limited Partnership ( ) Limited Liability Partnership ( ) Sole Proprietor

Physical Address: 777 South Broad Street          City: Philadelphia          State: PA          Zip: 19147

Mailing Address:                      City:                State:          Zip:

Date business started (mm/yy): 02/11          Federal ID#: Redacted

Monthly Total Sales _____          Monthly Card Sales _____          Monthly Cash Sales _____

### PURCHASE AND SALE OF FUTURE RECEIPTS

Merchant hereby sells, assigns and transfers to SFSI (making SFSI the absolute owner) in consideration of the purchase price specified below (the "Purchase Price"), all of Merchant's future accounts, contract rights and other rights to payment arising from or relating to the sale by Merchant's customers of cash, credit cards, charge cards, debit cards, prepaid cards, mobile payments and other similar payment methods in the ordinary course of Merchant's business (the "Receipts") for the payment of Merchant's sale of goods or rendition of services until the purchased amount specified below (the "Purchased Amount") has been delivered by Merchant to SFSI, provided that the Purchase Price, the Specified Percentage (as defined below) and/or the Purchased Amount may be adjusted by SFSI and Merchant in writing if one or more card processing conditions are not satisfied.

The Purchased Amount shall be paid to SFSI by Merchant's irrevocably authorizing only one card processor acceptable to SFSI ("Processor") to remit to or for the benefit of SFSI the percentage specified below (the "Specified Percentage") of Merchant's settlement amounts due from each card issuer with respect to the Receipts, until such time as SFSI receives payment in full of the Purchased Amount. Furthermore Merchant will not enter into another cash advance agreement or any other type of factoring agreement during the term of this contract. Notwithstanding anything to the contrary in this Agreement or any other agreement between SFSI and Merchant, upon the occurrence of an Event of Default under Section 3 of the MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%.

Purchase Price: $18,000.00          Specified Percentage: 20 %          Receipts Purchased Amount: $23,382.00

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS", THE "MERCHANT SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM" EACH OF WHICH IS ATTACHED HERETO, ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS AGREEMENT.

MERCHANT #1
By Carla Rossano    Carla Rossano President          Carla Rossano          **Sign Here**
              (Print Name and Title)                    (Signature)

MERCHANT #2
By Anthony Rossano Jr.    Anthony Rossano Manager          (Signature)          **Sign Here**
              (Print Name and Title)

OWNER/GUARANTOR #1
By Carla Rossano    Carla Rossano          Carla Rossano          **Sign Here**
              (Print Name)                    (Signature)

OWNER/GUARANTOR #2
By Anthony Rossano Jr.    Anthony Rossano Manager          (Signature)          **Sign Here**
              (Print Name)

STRATEGIC FUNDING SOURCE, INC.

By _____          Associate Name _____
              (Strategic Funding Source, Inc. Officer)                    (Signature)

Each person signing this Agreement on behalf of Merchant represents that he or she is authorized to sign this Agreement on behalf of Merchant, and each person signing this Agreement on behalf of Merchant and/or as Owner/Guarantor represents that the information provided herein and in all of SFSI's forms is true, accurate and complete in all respects. SFSI may produce a monthly statement reflecting the delivery of the Specified Percentage of Receipts from Merchant to SFSI via Processor.

ANY MISREPRESENTATION MADE BY MERCHANT OR ANY OWNER/GUARANTOR IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.

Page 1 of 7

## MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS

**I. TERMS OF ENROLLMENT IN PROGRAM**

**1.1 Merchant Cash Advance Agreement.** These terms and conditions shall be incorporated in and made a part of the attached Merchant Cash Advance Agreement (such Merchant Cash Advance Agreement, as supplemented by these terms and conditions, this "Agreement").

**1.2 Merchant Processing Agreement.** Merchant shall execute an agreement (the "Merchant Processing Agreement") acceptable to SFSI, with a card processor acceptable to SFSI, to obtain card processing services. Merchant shall authorize Processor to deduct the amounts owed to SFSI for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from Processor card transactions and to pay such amounts to SFSI pursuant to SFSI's instructions to Processor. The authorization shall be irrevocable without the written consent of SFSI. Processor may rely upon the instructions of SFSI, without any independent verification, in making such deductions and payments, and Merchant waives any claims for damages it may have against Processor in connection with such acts unless such damages were due to Processor's failure to follow SFSI's instructions.

**1.3 Purchase Price Reduction.** SFSI may, in its sole discretion, reduce the Purchase Price if one or more card processing conditions are not satisfied.

**1.4 Bridge / Control Account.** Merchant may be required to open a new bank account into which 100% of the settlement amounts will be deposited and the Specified Percentages collected by SFSI (the "Bridge / Control Account") Merchant appoints SFSI as "Acting Agent" over the Bridge / Control Account, and shall instruct Processor to designate the Bridge / Control Account as the deposit account for all of Merchant's customers' card transactions. Merchant assumes all responsibility for all fees, costs, chargebacks or suspicious items processed through the Bridge / Control Account (see "Miscellaneous Service Fees" paragraph 3.7). Merchant agrees to maintain a minimum balance in the Bridge / Control Account (the "Minimum Balance") equal to the per-month average of all fees charged to Merchant by Processor, averaged over a six-month period.

**1.5 Financial Condition.** Merchant and each Owner/Guarantor authorize SFSI, its agents and representatives, and any credit reporting agency engaged by SFSI, to investigate their creditworthiness, financial responsibility and history, and they agree to provide SFSI any financial statements, tax returns, references, or other credit or financial information as SFSI deems necessary prior to or after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of credit and financial information. Merchant and each Owner/Guarantor authorize SFSI to update their credit and financial profile from time to time in the future, as SFSI deems appropriate. An investigative or consumer report may be made or obtained in connection with this Agreement.

**1.6 Transactional History.** Merchant authorizes Processor and each of Merchant's banks to provide SFSI upon request with Merchant's card history or bank statements, as applicable.

**1.7 Indemnification.** Merchant and each Owner/Guarantor jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by SFSI for monies owed to SFSI from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by SFSI.

**1.8 No Liability.** In no event will Processor or SFSI be liable for any claims asserted by Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by Merchant and each Owner/Guarantor.

**1.9 Reliance on Terms.** Sections 1.2, 1.7, 1.8, 2.5, and 4.6 hereof are agreed to for the benefit of Merchant, SFSI and Processor, and notwithstanding the fact that Processor is not a party to this Agreement, Processor may rely upon their terms and raise them as a defense in any action.

**1.10 Sale of Receipts.** Merchant and SFSI intend that the transfer of the interest in the Receipts from Merchant to SFSI constitutes a sale, and not a loan, for all purposes. Merchant agrees that the Purchase Price equals the fair market value of such interest. If, notwithstanding such intent, such transfer is not deemed to constitute a sale, Merchant hereby grants to SFSI a security interest in all right, title and interest of Merchant in and to the Receipts, which security interest shall secure the payment of the Purchased Amount and all other obligations of Merchant under this Agreement. In no event shall the aggregate of all amounts deemed interest hereunder and charged or collected hereunder exceed the highest rate permissible at law. In the event that a court determines that SFSI has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and SFSI shall promptly refund to Merchant any interest received by SFSI in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that SFSI not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. Merchant hereby authorizes SFSI to file any financing statements deemed necessary by SFSI to perfect or maintain SFSI's interest in the Receipts.

**1.11 Power of Attorney.** Merchant irrevocably appoints SFSI and any assignee of SFSI as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to SFSI from Processor, or upon the occurrence of an Event of Default under Section 3.1 hereof, to settle all obligations due to SFSI from Merchant, under this Agreement, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral (as defined in the Merchant Security Agreement and Guaranty); (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to SFSI; and (v) to file any claims or take any action or institute any proceeding which SFSI may deem necessary for the collection of any unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount.

**1.12 Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner/Guarantor, in respect of himself or herself personally, authorizes SFSI to disclose to any third party information concerning Merchant's and each Owner's/Guarantor's credit standing (including credit bureau reports that SFSI obtains) and business conduct. Merchant and each Owner/Guarantor hereby waive to the maximum extent permitted by law any claim for damages against SFSI or any of its affiliates relating to any (i) investigation undertaken by or on behalf of SFSI as permitted by this Agreement or (ii)

disclosure of information as permitted by this Agreement.

**1.13 Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by SFSI, including this Agreement, the Merchant Security Agreement and Guaranty and any other documents executed in connection with such agreements or related to such agreements (collectively, "Confidential Information") are proprietary and confidential information of SFSI. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant (an "Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to not disclose Confidential Information to any person in accordance with the terms of this Section 1.13.

**1.14 Publicity.** Merchant and each Owner/Guarantor authorize SFSI to use their respective names in a listing of clients and in advertising and marketing materials.

**1.15 D/B/A's.** Merchant and each Owner/Guarantor hereby acknowledge and agree that SFSI may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between SFSI and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**1.16 Financial Information.** Merchant and each Owner/Guarantor shall provide to SFSI upon request copies of financial statements representing the financial condition of Merchant and/or such Owner/Guarantor.

**II. REPRESENTATIONS, WARRANTIES AND COVENANTS**

Merchant and each Owner/Guarantor each represents, warrants and covenants that as of the date of this Agreement and on each date during the term of this Agreement:

**2.1 Financial Condition and Financial Information.** Its financial statements, copies of which have been furnished to SFSI, and any financial statements furnished to SFSI hereafter, fairly represent the financial condition of Merchant and each Owner/Guarantor at such dates, and since those dates there has been no material adverse change, financial or otherwise, in such condition or in the operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise SFSI of any material adverse change in its financial condition, operation or ownership.

**2.2 Governmental Approvals.** Merchant is and will remain in compliance with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

**2.3 Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to execute this Agreement and to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**2.4 Insurance.** Merchant has and will maintain business-interruption insurance naming SFSI as loss payee and additional insured in such amounts and against such risks as are satisfactory to SFSI and shall provide SFSI proof of such insurance upon request.

**2.5 Merchant Processing Agreement and Arrangements.** Without SFSI's prior written consent, Merchant will not: (i) change the card processor through which the Receipts are settled from Processor to another card processor; (ii) permit any event to occur that could cause diversion of any of Merchant's card transactions from Processor to another processor; (iii) change its arrangements with Processor or amend the

Merchant Processing Agreement in any way that is adverse to SFSI; (iv) add card processing terminals; (v) use multiple card processing terminals; (vi) change its financial institution or bank account(s) (including, if applicable, the Bridge / Control Account); (vii) take any other action that could have any adverse effect upon Merchant's obligations under this Agreement or SFSI's interest in the Receipts; or (viii) take any action, fail to take any action, or offer any inactive-economic or otherwise—the result of which could be to discourage the use of cards that are settled through Processor, or to induce any customers to pay for Merchant's services with any means other than cards that are settled through Processor, or permit any event to occur that could have an adverse effect on the use, acceptance, or authorization of cards for the purchase of Merchant's services and products.

2.6 Change of Name or Location. Merchant will not conduct its businesses under any name other than as disclosed to Processor and SFSI or change any of its places of business.

2.7 Daily Batch Out. Merchant will batch out receipts with Processor on a daily basis.

2.8 Estoppel Certificate. Merchant will at any time, and from time to time, upon at least one (1) day's prior notice from SFSI to Merchant, execute, acknowledge and deliver to SFSI and/or to any other person, firm or corporation specified by SFSI, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates on which the Purchased Amount or any portion thereof has been paid.

2.9 No Bankruptcy. Neither Merchant nor any Owner/Guarantor has filed any petition for bankruptcy protection under Title 11 of the United States Code, no involuntary petition for bankruptcy has been brought or is pending against Merchant or any Owner/Guarantor, neither Merchant nor any Owner/Guarantor has admitted in writing its inability to pay its debts or made a general assignment for the benefit of creditors, and no other proceeding has been instituted by or against Merchant or any Owner/Guarantor seeking to adjudicate it insolvent or seeking reorganization, arrangement, adjustment or composition of it or its debts. Merchant does not anticipate filing any such bankruptcy petition and it has not aware and has no reason to believe that any such bankruptcy petition or other proceeding will be filed or brought against it or any Owner/Guarantor.

2.10 Other Financing. Merchant shall not enter into any arrangement, agreement or commitment that relates to or involves Receipts, whether in the form of a purchase (such as a merchant cash advance) of, a loan against, or the sale or purchase of credits against, any Receipts, cash deposits or future card or mobile payment sales with any party other than SFSI without its written permission.

2.11 Unencumbered Receipts. Merchant has good and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interest of, SFSI.

2.12 Business Purpose. Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purpose and not as a consumer for personal, family or household purposes.

2.13 Default Under Other Contracts. Merchant's execution of or performance under this Agreement will not cause or create any breach or default by Merchant under any contract with another person or entity.

2.14 Delivery of Confession of Judgment. Upon execution of this Agreement, Merchant shall, if requested by SFSI, deliver to SFSI an executed Confession of Judgment (the "Confession of Judgment"), in the form provided by SFSI, in favor of SFSI in the amount of the Purchased Amount.

2.15 Delivery of Assignment of Lease. Merchant and each Owner/Guarantor authorize SFSI to receive pertinent information regarding the commercial lease for the physical location(s) of Merchant's business (the "Premises") from any applicable leasing company and or agent. Merchant may be asked to deliver to SFSI an executed Assignment of Lease assigning all of Merchant's right, title and interest in and to the Premises and under the lease for the Premises to SFSI (the "Assignment of Lease").

2.16 Sale of Business. Merchant shall not sell, dispose, transfer or otherwise convey its business or assets without (i) the express prior written consent of SFSI, and (ii) the written agreement of any purchaser or transferee assuming all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to SFSI.

2.17 Bridge / Control Account. If Merchant is required to open a Bridge / Control Account, (i) Merchant will not, unless otherwise directed in writing by SFSI, take any action to cause the Specified Percentage of the settlement amounts to be settled or delivered to any account other than the Bridge / Control Account and (ii) Merchant will at all times maintain the Minimum Balance in the Bridge / Control Account.

2.18 Use of Proceeds. Merchant will conduct its business and use the Purchase Price in the ordinary course of its business, consistent with past practice.

2.19 Accuracy of Information. All information provided by Merchant and each Owner/Guarantor to SFSI herein, in the Merchant Security Agreement and Guaranty, and in all other documents executed in connection with such agreements or related to such agreements is true, accurate and complete in all respects.

## III. EVENTS OF DEFAULT AND REMEDIES

3.1 Events of Default. The occurrence of any of the following events shall constitute an "Event of Default" hereunder: (a) Merchant or any Owner/Guarantor violates any term, covenant or condition in this Agreement, the Merchant Security Agreement and Guaranty or any other agreement with SFSI; (b) any representation or warranty by Merchant or any Owner/Guarantor in this Agreement, the Merchant Security Agreement and Guaranty, or any other agreement with SFSI shall prove to have been incorrect, incomplete, false or misleading in any material respect when made; (c) Merchant or any Owner/Guarantor admits in writing its inability to pay its debts, or makes a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against Merchant or any Owner/Guarantor seeking to adjudicate it bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts; (d) any Owner/Guarantor sends a notice of termination of the Merchant Security Agreement and Guaranty; (e) Merchant suspends, dissolves or terminates its business; (f) Merchant sells all or substantially all of its assets; (g) Merchant makes or sends notice of any intended bulk sale or transfer by Merchant; (h) Merchant performs any act that incumbers the cash flow of the business placing under stress on the viability of the operations and reduces the value of the Collateral or the security interest granted in the Collateral under the Merchant Security Agreement and Guaranty; (i) any Owner/Guarantor performs any act that reduces the value of the Additional Collateral (as defined in the Merchant Security Agreement and Guaranty) or the security

interest granted in the Additional Collateral under the Merchant Security Agreement and Guaranty; or (j) Merchant or any Owner/Guarantor files any petition for bankruptcy under the United States code or an involuntary petition for bankruptcy has been brought or is pending against Merchant or any Owner/Guarantor, (k)Merchant or any Owner/Guarantor defaults under any of the terms, covenants and conditions of any other agreement with SFSI including those with affiliated / associated businesses.

3.2 Remedies. Upon the occurrence of an Event of Default that is not waived pursuant to Section 4.4 hereof, SFSI may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the performance of Merchant's and each Owner's/Guarantor's obligations hereunder, under the Merchant Security Agreement and Guaranty, or pursuant to any other legal or equitable right or remedy. Upon SFSI's notice to Merchant of any Event of Default, the entire Receipts Purchased Amount and unpaid fees not already paid to SFSI shall become immediately due and payable to SFSI. In addition, upon an Event of Default (i) SFSI may enforce the provisions of the Merchant Security Agreement and Guaranty against each Owner/Guarantor; (ii) SFSI may enforce its security interest in the Collateral and Additional Collateral; (iii) SFSI may debit Merchant's deposit accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise; (iv) SFSI may enter the Confession of Judgment as a judgment with the appropriate Clerk of Court and execute thereon; and (v) SFSI may exercise its rights under the Assignment of Lease. All rights, powers and remedies of SFSI in connection with this Agreement and the Merchant Security Agreement and Guaranty may be exercised at any time by SFSI after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

3.3 Costs. Merchant and each Owner/Guarantor shall pay to SFSI all costs reasonably incurred by SFSI in connection with (a) any Event of Default including without limitation any breach by Merchant or any Owner/Guarantor of the representations, warranties and covenants in this Agreement or the Merchant Security Agreement and Guaranty, and (b) the enforcement of SFSI's remedies set forth in Section 3.2 hereof, including but not limited to court costs and attorneys' fees.

3.4 Required Notifications. Merchant and each Owner/Guarantor shall give SFSI written notice within 24 hours of any filing by Merchant or any Owner/Guarantor under Title 11 of the United States Code or of the occurrence of any other event described in Section 3.1(c) hereof. Merchant shall give SFSI seven days' written notice prior to the closing of any sale of all or substantially all of Merchant's assets or stock. Merchant shall give SFSI seven days' written notice prior to the suspension, dissolution or terminations its business.

3.5 Default Fee. Upon the Occurrence of any Event of Default, and written notice to Merchant thereof, Merchant shall pay to SFSI a default fee ("Default Fee") of $2,500. This Default Fee shall be payable on demand and stand in addition to any other fees or penalties outlined within this Agreement, the Merchant Security Agreement or Guaranty.

3.6 Processor Change Fee. Merchant shall pay a processor change fee (the "Processor Change Fee") to SFSI in the amount of $5,000.00 in the event that Merchant (i) uses multiple card processing terminals without the prior written consent of SFSI, (ii) changes its card processor without the prior written consent of SFSI or (iii) directs Processor to deliver settlement

amounts to any account other than the Bridge / Control Account (if Merchant is required to open a Bridge / Control Account). Such Processor Change Fee (i) shall be due and payable to SFSI on demand, (ii) is not exclusive of, and is cumulative with, any other fee or amount paid or payable to SFSI by Merchant pursuant to this Agreement or the Merchant Security Agreement and Guaranty; and (iii) shall not be construed as a waiver of any Event of Default hereunder or under the Merchant Security Agreement and Guaranty or as otherwise operating to reduce or limit SFSI's rights or remedies provided for hereunder, under the Merchant Security Agreement and Guaranty or at law or in equity.

3.7 **Miscellaneous Service Fees.** Merchant shall pay certain fees for services related to the origination and maintenance of accounts which may include but not be limited to: Merchant funding is done electronically to their designated bank account and charged a fee of $30.00 for a Fed Wire or $12.50 for an ACH. The fee for underwriting and origination is $295.00 paid from the funded amount. If Merchant is utilizing a Bridge / Control Account, there is an upfront fee of $395.00 for the bank fees and administrative costs of maintaining such account for each cash advance agreement with Merchant. Fund transfers from Bridge / Control Accounts to Merchant's operating bank account will be charged $7.50 per month via ACH. Merchant will be charged $35.00 for each change of its operating bank account once active with SFSI. Any administrative adjustments associated with changes to the Specified Percentage will incur a fee of $30.00 per occurrence.

INITIALS: _____

## IV. MISCELLANEOUS

4.1 **Modifications; Agreements.** No modification, amendment, or waiver of any provision of, or consent to any action under, this Agreement or the Merchant Security Agreement and Guaranty shall be effective unless the same is in writing and signed by SFSI.

4.2 **Assignment.** SFSI may assign its rights and/or obligations under this Agreement and/or the Merchant Security Agreement and Guaranty in whole or in part without prior notice to Merchant or any Owner/Guarantor, including, without limitation, its right to receive all or any portion of the Purchased Amount and its obligation to fund all or any portion of the Purchase Price. Merchant acknowledges that, if any such assignment is made, persons other than SFSI may have the right to exercise rights or remedies against Merchant pursuant to this Agreement. Merchant shall not have, and no Owner/Guarantor shall have, the right to assign its rights and/or obligations under this Agreement and/or the Merchant Security Agreement and Guaranty or any interest herein or therein without the prior written consent of SFSI, which consent may be withheld in SFSI's sole discretion.

4.3 All notices, requests, consent, demands and other communications hereunder and under the Merchant Security Agreement and Guaranty shall be delivered by ordinary mail, effective upon mailing, to the respective parties to this Agreement and the Merchant Security Agreement and Guaranty at the addresses set forth in this Agreement and shall become effective only upon receipt. The Parties hereto may also send such notices, requests, consent, demands and other communications via facsimile ("FAX") or electronic mail ("Email") at such FAX numbers and email addresses communicated by the parties hereto in writing.

4.4 **Waiver; Remedies.** No failure on the part of SFSI to exercise, and no delay in exercising, any right under this Agreement or the Merchant Security Agreement and Guaranty shall operate as a waiver thereof, nor shall

any single or partial exercise of any right under this Agreement or the Merchant Security Agreement and Guaranty preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder and under the Merchant Security Agreement and Guaranty are cumulative and not exclusive of any remedies provided by law or equity.

4.5 **Solicitations.** Merchant and each Owner/Guarantor authorize SFSI and its affiliates to communicate with, solicit and for market to Merchant and each Owner/Guarantor via regular mail, telephone, email and facsimile in connection with the provision of goods or services by SFSI, its affiliates or any third party that SFSI directs, transfers, exchanges, discloses or provides information with and will hold SFSI, its affiliates and such third parties harmless against any and all claims pursuant to the federal CAN-SPAM ACT of 2003 (Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003), the Telephone Consumer Protection Act (TCPA), and any and all other state or federal laws relating to transmissions or solicitations by and any of the methods described above.

4.6 **Terminated Merchant File and Match File.** Merchant expressly acknowledges that a Terminated Merchant File ("TMF"), or any successor thereto, is maintained by MasterCard or VISA containing the business name and names and identification of principals of merchants which have been terminated for one or more of the reasons specified in MasterCard or VISA operating regulations. Such reasons include, but are not limited to, fraud, counterfeit drafts, unauthorized transactions, excessive charge-backs and retrieval requests, money laundering, or where a high security risk exists. MERCHANT ACKNOWLEDGES THAT PROCESSOR AND SFSI ARE REQUIRED TO REPORT THE BUSINESS NAME OF MERCHANT AND THE NAMES AND IDENTIFICATION OF ITS PRINCIPALS TO THE TMF WHEN A MERCHANT IS TERMINATED FOR ONE OR MORE OF THE REASONS SPECIFIED IN MASTERCARD OR VISA OPERATING REGULATIONS. MERCHANT EXPRESSLY AGREES AND CONSENTS TO SUCH REPORTING BY PROCESSOR AND SFSI AND RELEASES EACH FROM ANY DAMAGES FOR DOING SO IN GOOD FAITH.

4.7 **Binding Effect; Governing Law, Venue and Jurisdiction.** This Agreement and the Merchant Security Agreement and Guaranty shall be binding upon and inure to the benefit of Merchant, each Owner/Guarantor, SFSI and their respective successors and assigns. This Agreement and the Merchant Security Agreement and Guaranty shall be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable conflicts of law principles. Any suit, action or proceeding arising hereunder or under the Merchant Security Agreement and Guaranty, or the interpretation, performance or breach hereof or thereof, shall, if SFSI so elects, be instituted in any court sitting in New York, New York, (the "Acceptable Forum"). Each of Merchant and each Owner/Guarantor agrees that any state or federal court sitting in the Acceptable Forum is convenient to it, hereby irrevocably and unconditionally submits to the personal jurisdiction of any such court and hereby waives any and all objections to jurisdiction or venue. Each of Merchant and each Owner/Guarantor agrees that a final judgment in any such suit, action or proceeding brought in any such court shall be conclusive and binding upon such party and may be enforced in any other court to whose jurisdiction such party is or may be subject, by suit upon such judgment. Should such suit, action or proceeding be instituted in any other forum, Merchant and each Owner/Guarantor waive any right to oppose any motion or application made by SFSI to transfer such suit, action or proceeding to the Acceptable Forum.

4.8 **Survival of Representation, etc.** All representations, warranties and covenants herein and in the Merchant Security Agreement and Guaranty shall survive the execution and delivery of this Agreement and the Merchant Security Agreement and Guaranty and shall continue in full force until all obligations under this Agreement and the Merchant Security Agreement and Guaranty shall have been satisfied in full and this Agreement and the Merchant Security Agreement and Guaranty shall have terminated.

4.9 **Severability.** In case any of the provisions in this Agreement or the Merchant Security Agreement and Guaranty is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein or therein shall not in any way be affected or impaired.

4.10 **Entire Agreement.** Any provision hereof of the Merchant Security Agreement and Guaranty prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof or thereof. This Agreement and the Merchant Security Agreement and Guaranty embody the entire agreement between Merchant, each Owner/Guarantor and SFSI and supersede all prior agreements and understandings relating to the subject matter hereof.

4.11 **JURY TRIAL WAIVER.** THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THIS AGREEMENT OR THE MERCHANT SECURITY AGREEMENT AND GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY OR THE ENFORCEMENT HEREOF OR THEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY, VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH ITS ATTORNEYS.

4.12 **CLASS ACTION WAIVER.** THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST ANY OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW. TO THE EXTENT ANY PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST ANOTHER PARTY, THE PARTIES HERETO AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOTWITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT OR THE MERCHANT SECURITY AGREEMENT AND GUARANTY); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

INITIALS: _____

4.13 Counterparts; Facsimile and PDF Acceptance.

This Agreement and the Merchant Security Agreement and Guaranty may be executed in counterparts, each of which shall constitute an original, but all of which together shall constitute one instrument. Signatures on this Agreement and the Merchant Security Agreement and Guaranty sent by facsimile or PDF will be treated as original signatures for all purposes.

INITIALS: _A._

STRATEGIC FUNDING SOURCE, INC - MERCHANT SECURITY AGREEMENT AND GUARANTY

Merchant's Legal Name: b2 Salon, LLC                     D/B/A: b2 Salon (South Broad)

Physical Address: 777 South Broad Street                 City: Philadelphia  State: PA       Zip: 19147

Federal ID#: [Redacted]

## SECURITY AGREEMENT

**Security Interest.** To secure Merchant's payment and performance obligations to SFSI under the Merchant Cash Advance Agreement between Merchant and SFSI (the "Merchant Agreement"), Merchant hereby grants to SFSI a security interest in all personal property of Merchant, including all accounts, chattel paper, cash, deposit accounts, documents, equipment, general intangibles, instruments, inventory, or investment property, as those terms are defined in Article 9 of the Uniform Commercial Code of the State of New York as amended (the "UCC"), whether now or hereafter owned or acquired by Merchant and wherever located; and all proceeds of such property, as that term is defined in Article 9 of the UCC (collectively, the "Collateral").

**Cross-Collateral.** To secure Guarantor's payment and performance obligations to SFSI under this Merchant Security Agreement and Guaranty (this "Agreement"), each Guarantor hereby grants SFSI a security interest in ____ (PHILD030) ____ (the "Additional Collateral"). Each Guarantor agrees and acknowledges that SFSI will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement.

Each of Merchant and each Guarantor agrees to execute any documents or take any action in connection with this Agreement as SFSI deems necessary to perfect or maintain SFSI's first priority security interest in the Collateral and Additional Collateral, including the execution of any control agreements. Each of Merchant and each Guarantor hereby authorizes SFSI to file any financing statements deemed necessary by SFSI to perfect or maintain SFSI's security interest, which financing statements may contain notification that Merchant and each Guarantor have granted a negative pledge to SFSI with respect to the Collateral and Additional Collateral, and that any subsequent lender or lienor may be tortiously interfering with SFSI's rights. Merchant and each Guarantor shall be jointly and severally liable for and shall pay to SFSI upon demand all costs and expenses, including but not limited to attorneys' fees, which may be incurred by SFSI in protecting, preserving and enforcing SFSI's security interest and rights.

**Negative Pledge.** Each of Merchant and each Guarantor agrees not to create, incur, assume, or permit to exist, directly or indirectly, any additional cash advances, loans, lien or other encumbrance on or with respect to any of the Collateral or Additional Collateral, as applicable without written permission of SFSI.

**Consent to Enter Premises and Assign Lease.** SFSI shall have the right to cure Merchant's default in the payment of rent for the Premises on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, SFSI may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that SFSI may enter into an agreement with Merchant's landlord giving SFSI the right: (a) to enter the Premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and (b) to assign Merchant's lease to another qualified merchant capable of operating a business comparable to Merchant's at the Premises.

**Remedies.** Upon any Event of Default, SFSI may pursue any remedy available at law (including those available under the provisions of the UCC) or in equity to collect, enforce, or satisfy any obligations then owing to SFSI, whether by acceleration or otherwise.

## GUARANTY

**Performance Guaranty.** Each undersigned Guarantor ("Guarantor") hereby unconditionally guarantees to SFSI the payment and performance by Merchant of all of its obligations under this Agreement and the Merchant Agreement, as each agreement may be renewed, amended, extended or otherwise modified from time to time (the "Guaranteed Obligations"). Guarantor shall be liable for and shall pay SFSI may charge and collect all costs and expenses, including but not limited to attorneys' fees, which may be incurred by SFSI in connection with the collection of any or all of the Guaranteed Obligations from Guarantor or the enforcement of this Agreement.

**Guarantor Waivers.** In the event that Merchant fails to make any payment when due or otherwise perform under the Merchant Agreement, SFSI may enforce its rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral SFSI may hold pursuant to this Agreement or any other guaranty.

SFSI does not have to notify Guarantor of any of the following events and Guarantor will not be released from any of its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay timely any amount owed under the Merchant Agreement; (ii) any material or adverse change in Merchant's financial condition or business operations; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations, including without limitation the Collateral or Additional Collateral, or any other guarantee of the Guaranteed Obligations; (iv) SFSI's acceptance of this Agreement; or (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to SFSI. In addition, SFSI may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to SFSI; (ii) release Merchant from its obligations to SFSI; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations, including, without limitation the Collateral or Additional Collateral, in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Purchased Amount and Merchant's other obligations to SFSI under the Merchant Agreement and this Agreement are paid and performed in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that SFSI must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount. Guarantor agrees that its obligations under this Agreement shall be irrevocable and shall be unconditional irrespective of any circumstance that might otherwise operate as a legal or equitable discharge of a guarantor or a defense of a guarantor.

**Guarantor Acknowledgement.** Guarantor acknowledges that: (i) he/she understands the seriousness of the provisions of this Agreement and that any misrepresentation may constitute fraud; (ii) he/she has had a full opportunity to consult with counsel of his/her choice; and (iii) he/she has consulted with counsel of his/her choice or has decided not to avail himself/herself of that opportunity.

**Joint and Several Liability.** The obligations hereunder of each Guarantor are joint and several.

INITIAL: _A.A._

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT CASH ADVANCE AGREEMENT", INCLUDING THE "MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS AGREEMENT. CAPITALIZED TERMS NOT DEFINED IN THIS AGREEMENT SHALL HAVE THE MEANINGS SET FORTH IN THE MERCHANT CASH ADVANCE AGREEMENT, INCLUDING THE MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS.

MERCHANT #1
By Carla Rossano
_____ (Print Name and Title)
SS# {FIELD031}

(Signature)
Drivers License Number: {FIELD032}

Sign Here

MERCHANT #2
By Anthony Rossano Jr.
_____ (Print Name and Title)
SS# {FIELD034}

(Signature)
Drivers License Number: {FIELD035}

Sign Here

OWNER/GUARANTOR #1
By {FIELD036}
_____ (Print Name and Title)
SS# {FIELD037}

(Signature)
Drivers License Number: {FIELD038}

Sign Here

OWNER/GUARANTOR #2
By {FIELD039}
_____ (Print Name and Title)
SS# {FIELD040}

(Signature)
Drivers License Number: {FIELD041}

Sign Here

# Exhibit B

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

~~T OF TREASURY~~
~~SECTION~~
~~FILED~~

2012 JAN 13  A 5:00

2613593-9

A. NAME & PHONE OF CONTACT AT FILER [optional]
Phone:(800) 331-3282  Fax: (818) 662-4141

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)        20385 STRATEGIC FUND

CT Lien Solutions        31356583
P.O. Box 29071
Glendale, CA 91209-9071        NJNJ

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| b2 Salon, LLC | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 777 South Broad Street | Philadelphia | PA | 19147 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION LLC | 1f. JURISDICTION OF ORGANIZATION PA | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | [X] NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| b2 Salon | | | | |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 777 South Broad Street | Philadelphia | PA | 19147 | USA |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION DBA | 2f. JURISDICTION OF ORGANIZATION PA | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | [X] NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Strategic Funding Source, Inc. | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1501 Broadway, Suite 360 | New York | NY | 10036 | USA |

4. This FINANCING STATEMENT covers the following collateral:

Accounts, accounts receivable, contracts, real property leases, notes, bills, acceptances, chooses in action, chattel paper, instruments, documents and other forms of obligations at any time owing to the Grantor arising out of goods sold or leased or for services rendered by Grantor, the proceeds thereof and all of Grantor's rights with respect to any goods represented thereby, whether or not delivered, goods returned by customers and all rights as an unpaid vendor or lienor, including rights of stoppage in transit and of recovering possession by proceedings including replevin and reclamation, together with all customer lists, books and records, ledger and account cards, computer tapes, software, disks, printouts and records, whether now in existence or hereafter created, relating thereto (collectively referred to hereinafter as "Receivables"); Inventory, including without limitation, all goods manufactured or acquired for sale or lease, and any piece goods, raw materials, work in process and finished merchandise, findings or component materials, and all supplies, goods, incidentals, office supplies, packaging materials and any and all items used or consumed in the operation of the business of Grantor or which may contribute to the finished product or to the sale, promotion and shipment thereof. In which Grantor now or at any time hereafter may have an interest, whether or not the same is in transit or in the constructive, actual or exclusive occupancy or possession of Grantor or is held by Grantor or by others for Grantor's account (collectively referred to hereinafter as "Inventory"); Goods, including without limitation, all machinery, equipment, parts, supplies, apparatus, appliances, tools, fittings, furniture, furnishings, fixtures and articles of tangible personal property of every description now or hereafter owned by the Grantor or in which Grantor may have or may hereafter acquire any interest, at any location (collectively referred to hereinafter as "Equipment"); General intangibles in which the Grantor now has or hereafter acquires any rights, including but not limited to, causes of action, corporate or business records, inventions, designs, patents, patent applications, trademarks, trademark registrations and applications therefor, goodwill, trade names, trade secrets, trade processes, copyrights, copyright registrations and applications therefor, licenses, permits, franchises, customer lists, computer Continued on addendum.

| 5. ALTERNATIVE DESIGNATION [if applicable] | [ ] LESSEE/LESSOR | [ ] CONSIGNEE/CONSIGNOR | [ ] BAILEE/BAILOR | [ ] SELLER/BUYER | [ ] AG. LIEN | [ ] NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]  [optional] | [ ] All Debtors | [ ] Debtor 1 | [ ] Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

31356583        17885

Prepared by CT Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

ACKNOWLEDGMENT COPY - NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

# FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| 9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT | | |
|---|---|---|
| 9a. ORGANIZATION'S NAME | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |

10. MISCELLANEOUS

31356583-NJ-0

20385 STRATEGIC FUND

File with: New Jersey    17885

213593-9

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names | | | | | |
|---|---|---|---|---|---|
| 11a. ORGANIZATION'S NAME | | | | | |
| 11b. INDIVIDUAL'S LAST NAME | | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 11c. MAILING ADDRESS | | CITY | | STATE | POSTAL CODE | COUNTRY |
| 11d. SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | NONE |

12. ☐ ADDITIONAL SECURED PARTY'S  or  ☐ ASSIGNOR S/P's  NAME - insert only one name (12a or 12b)

| 12a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 12b. INDIVIDUAL'S LAST NAME | | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 12c. MAILING ADDRESS | | CITY | | STATE | POSTAL CODE | COUNTRY |

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral or is filed as a ☐ fixture filing.

14. Description of real estate:

16. Additional collateral description:

programs, all claims under guaranties, tax refund claims, rights and claims against carriers and shippers, leases, claims under insurance policies, all rights to indemnification and all other intangible personal property and intellectual property of every kind and nature (collectively referred to hereinafter as "Intangibles"); All the capital stock, bonds, notes, partnership interests, member interests in limited liability companies, and other securities, if any, held of record or beneficially by the Grantor, including without limitation the capital stock of all subsidiaries of the Grantor, and the Grantor's interests in all securities brokerage accounts (collectively referred to hereinafter as "Investments"); All cash on hand and on deposit in banks, trust companies and similar institutions, and all property accounted for in the Grantor's financial statements as "cash equivalents" (collectively referred to hereinafter as "Cash"); All accessions to, substitutions for and all replacements, products and proceeds of the Receivables, Inventory, Equipment, Intangibles, Investments and Cash (collectively referred to hereinafter as "Collateral"), including without limitation proceeds of insurance policies insuring the Collateral; and Books and records relating to any of the Collateral (including without limitation, customer data, credit files, computer programs, printouts, and other computer materials and records of the Grantor pertaining to any of the

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust  or ☐ Decedent's Estate

18. Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction
☐ Filed in connection with a Public-Finance Transaction

ACKNOWLEDGMENT COPY - NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/21/09)

Prepared by CT Lien Solutions, P.O. Box 29071
Glendale, CA 91209-9071 Tel (800) 331-3282

# FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| | |
|---|---|
| 9a. ORGANIZATION'S NAME | |

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|

**10. MISCELLANEOUS**

G1356583-NJ-0

**20385 STRATEGIC FUND**

File with:  New Jersey    17885

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names**

| 11a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 11d. SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**12. ☐ ADDITIONAL SECURED PARTY'S  or  ☐ ASSIGNOR S/P's  NAME - insert only one name (12a or 12b)**

| 12a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral or is filed as a ☐ fixture filing.

**14.** Description of real estate:

**16.** Additional collateral description:

foregoing).   NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN. THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCER IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEROF RECEIVED BY SUCH ENTITY.

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**17.** Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust   or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction
☐ Filed in connection with a Public-Finance Transaction

ACKNOWLEDGMENT COPY - NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/21/09)

Prepared by CT Lien Solutions, P.O. Box 29071
Glendale, CA 91209-9071 Tel (800) 331-3282

Exhibit C



**STRATEGIC**
FUNDING

Contract# 87751
Sales Partner: Capital Solutions
/ John Aitkens

## MERCHANT CASH ADVANCE AGREEMENT

Agreement dated ___January___ ___11___ ___2012___ between Strategic Funding Source Inc. ("SFSI") and the merchant listed below ("the Merchant").
(Month)   (Day)   (Year)

### MERCHANT INFORMATION

Merchant's Legal Name: b2 Salon, LLC

D/B/A: b2 Salon (Egg Harbor)    State of incorporation/organization: NJ

Type of entity: ( ) Corporation ( X ) Limited Liability Company ( ) Limited Partnership ( ) Limited Liability Partnership ( ) Sole Proprietor

Physical Address: 201 Egg Harbor Road    City: Sewell    State: NJ    Zip: 08021

Mailing Address:    City:    State:    Zip:

Date business started (mm/yy): 02/11    Federal ID# Redacted

Monthly Total Sales _____   Monthly Card Sales _____   Monthly Cash Sales _____

### PURCHASE AND SALE OF FUTURE RECEIPTS

Merchant hereby sells, assigns and transfers to SFSI (making SFSI the absolute owner) in consideration of the purchase price specified below (the "Purchase Price"), all of Merchant's future accounts, contract rights and other rights to payment arising from or relating to the use by Merchant's customers of cash, credit cards, charge cards, debit cards, prepaid cards, mobile payments and other similar payment methods in the ordinary course of Merchant's business (the "Receipts") for the payment of Merchant's sale of goods or rendition of services until the purchased amount specified below (the "Purchased Amount") has been delivered by Merchant to SFSI, provided that the Purchase Price, the Specified Percentage (as defined below) and/or the Purchased Amount may be adjusted by SFSI and Merchant in writing if one or more card processing conditions are not satisfied.

The Purchased Amount shall be paid to SFSI by Merchant's irrevocably authorizing only one card processor acceptable to SFSI ("Processor") to remit to or for the benefit of SFSI the percentage specified below (the "Specified Percentage") of Merchant's settlement amounts due from each card issuer with respect to the Receipts, until such time as SFSI receives payment in full of the Purchased Amount. Furthermore Merchant will not enter into another cash advance agreement or any other type of factoring agreement during the term of this contract. Notwithstanding anything to the contrary in this Agreement or any other agreement between SFSI and Merchant, upon the occurrence of an Event of Default under Section 3 of the MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%.

Purchase Price: $14,000.00    Specified Percentage: 20 %    Receipts Purchased Amount: $18,186.00

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS", THE "MERCHANT SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM" EACH OF WHICH IS ATTACHED HERETO, ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS AGREEMENT.

**MERCHANT #1**
By Anthony Rossano Jr. _____   _____   Sign Here
(Print Name and Title)   (Signature)

**MERCHANT #2**
By Carla Rossano   Carla Rossano President   Carla Rossano   Sign Here
(Print Name and Title)   (Signature)

**OWNER/GUARANTOR #1**
By Anthony Rossano Jr. _____   _____   Sign Here
(Print Name)   (Signature)

**OWNER/GUARANTOR #2**
By Carla Rossano   Carla Rossano President   Carla Rossano   Sign Here
(Print Name)   (Signature)

**STRATEGIC FUNDING SOURCE, INC.**

By _____   Associate Name _____
(Strategic Funding Source, Inc. Officer)   (Signature)

Each person signing this Agreement on behalf of Merchant represents that he or she is authorized to sign this Agreement on behalf of Merchant, and each person signing this Agreement on behalf of Merchant and/or as Owner/Guarantor represents that the information provided herein and in all of SFSI's forms is true, accurate and complete in all respects. SFSI may produce a monthly statement reflecting the delivery of the Specified Percentage of Receipts from Merchant to SFSI via Processor.

ANY MISREPRESENTATION MADE BY MERCHANT OR ANY OWNER/GUARANTOR IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.

## MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS

**I. TERMS OF ENROLLMENT IN PROGRAM**

**1.1 Merchant Cash Advance Agreement.** These terms and conditions shall be incorporated in and made a part of the attached Merchant Cash Advance Agreement (such Merchant Cash Advance Agreement, as supplemented by these terms and conditions, this "Agreement").

**1.2 Merchant Processing Agreement.** Merchant shall execute an agreement (the "Merchant Processing Agreement") acceptable to SFSI, with a card processor acceptable to SFSI, to obtain card processing services. Merchant shall authorize Processor to deduct the amounts owed to SFSI for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from Processor card transactions and to pay such amounts to SFSI pursuant to SFSI's instructions to Processor. The authorization shall be irrevocable without the written consent of SFSI. Processor may rely upon the instructions of SFSI, without any independent verification, in making such deductions and payments, and Merchant waives any claims for damages it may have against Processor in connection with such acts unless such damages were due to Processor's failure to follow SFSI's instructions.

**1.3 Purchase Price Reduction.** SFSI may, in its sole discretion, reduce the Purchase Price if one or more card processing conditions are not satisfied.

**1.4 Bridge / Control Account.** Merchant may be required to open a new bank account into which 100% of the settlement amounts will be deposited and the Specified Percentage collected by SFSI (the "Bridge / Control Account"). Merchant appoints SFSI as "Acting Agent" over the Bridge / Control Account, and shall instruct Processor to designate the Bridge / Control Account as the deposit account for all of Merchant's customers' card transactions. Merchant assumes all responsibility for all fees, costs, charge-backs or suspicious items transacted through the Bridge / Control Account (see "Miscellaneous Service Fees" paragraph 3.7). Merchant agrees to maintain a minimum balance in the Bridge / Control Account (the "Minimum Balance") equal to the pro-month's average of all fees charged to Merchant by Processor, averaged over a six-month period.

**1.5 Financial Condition.** Merchant and each Owner/Guarantor authorize SFSI, its agents and representatives, and any credit reporting agency engaged by SFSI, to investigate their creditworthiness, financial responsibility and history, and they agree to provide SFSI any financial statements, tax returns, references, or other credit or financial information as SFSI deems necessary prior to or after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of credit and financial information. Merchant and each Owner/Guarantor authorize SFSI to update their credit and financial profile from time to time in the future, as SFSI deems appropriate. An investigation or consumer report may be made or obtained in connection with this Agreement.

**1.6 Transactional History.** Merchant authorizes Processor and each of Merchant's banks to provide SFSI upon request with Merchant's card history or bank statements, as applicable.

**1.7 Indemnification.** Merchant and each Owner/Guarantor jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by SFSI for monies owed to SFSI from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by SFSI.

**1.8 No Liability.** In no event will Processor or SFSI be liable for any claims asserted by Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by Merchant and each Owner/Guarantor.

**1.9 Reliance on Terms.** Sections 1.2, 1.7, 1.8, 2.5, and 4.6 hereof are agreed to for the benefit of Merchant, SFSI and Processor, and notwithstanding the fact that Processor is not a party to this Agreement, Processor may rely upon their terms and raise them as a defense in any action.

**1.10 Sale of Receipts.** Merchant and SFSI intend that the transfer of the interest in the Receipts from Merchant to SFSI constitute a sale, and not a loan, for all purposes. Merchant agrees that the Purchase Price equals the fair market value of such interest. If, notwithstanding such intent, such transfer is not deemed to constitute a sale, Merchant hereby grants to SFSI a security interest in all right, title and interest of Merchant in and to the Receipts, which security interest shall secure the payment of the Purchased Amount and all other obligations of Merchant under this Agreement. In no event shall the aggregate of all amounts deemed interest hereunder and charged or collected hereunder exceed the highest rate permitted by applicable law. In the event that a court determines that SFSI has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and SFSI shall promptly refund to Merchant any interest received by SFSI in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that SFSI not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. Merchant hereby authorizes SFSI to file any financing statements deemed necessary by SFSI to perfect or maintain SFSI's interest in the Receipts.

**1.11 Power of Attorney.** Merchant irrevocably appoints SFSI and any assignee of SFSI as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to SFSI from Processor, or upon the occurrence of an Event of Default under Section 3.1 hereof, to settle all obligations due to SFSI from Merchant, under this Agreement, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due to or to become due under or in respect of any of the Collateral (as defined in the Merchant Security Agreement and Guaranty); (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to SFSI; and (v) to file any claim or take any action or institute any proceeding which SFSI may deem necessary for the collection of any unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount.

**1.12 Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner/Guarantor, in respect of himself or herself personally, authorizes SFSI to disclose to any third party information concerning Merchant's and each Owner's/Guarantor's credit standing (including credit bureau reports that SFSI obtains) and business conduct. Merchant and each Owner/Guarantor hereby waive to the maximum extent permitted by law any claim for damages against SFSI or any of its affiliates relating to any (i) investigation undertaken by or on behalf of SFSI as permitted by this Agreement or (ii)

disclosure of information as permitted by this Agreement.

**1.13 Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by SFSI, including this Agreement, the Merchant Security Agreement and Guaranty and any other documents executed in connection with such agreements or related to such agreements (collectively, "Confidential Information") are proprietary and confidential information of SFSI. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to not disclose Confidential Information to any person in accordance with the terms of this Section 1.13.

**1.14 Publicity.** Merchant and each Owner/Guarantor authorize SFSI to use their respective names in a listing of clients and in advertising and marketing materials.

**1.15 D/B/A's.** Merchant and each Owner/Guarantor hereby acknowledge and agree that SFSI may be using other names of such Owner/Guarantor in connection with various matters relating to the transaction between SFSI and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**1.16 Financial Information.** Merchant and each Owner/Guarantor shall provide to SFSI upon request copies of financial statements representing the financial condition of Merchant and/or such Owner/Guarantor.

**II. REPRESENTATIONS, WARRANTIES AND COVENANTS**

Merchant and each Owner/Guarantor each represents, warrants and covenants that as of the date of this Agreement and on each date during the term of this Agreement:

**2.1 Financial Condition and Financial Information.** Its financial statements, copies of which have been furnished to SFSI, and any financial statements furnished to SFSI hereafter, fairly represent the financial condition of Merchant and each Owner/Guarantor at such dates, and since those dates there has been no material adverse change, financial or otherwise, in such condition or in the operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise SFSI of any material adverse change in its financial condition, operation or ownership.

**2.2 Governmental Approvals.** Merchant is and will remain in compliance with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

**2.3 Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to execute this Agreement and to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**2.4 Insurance.** Merchant has and will maintain business-interruption insurance naming SFSI as loss payee and additional insured in such amounts and against such risks as are satisfactory to SFSI and shall provide SFSI proof of such insurance upon request.

**2.5 Merchant Processing Agreement and Arrangements.** Without SFSI's prior written consent, Merchant will not: (i) change the card processor through which the Receipts are settled from Processor to another card processor; (ii) permit any event to occur that could cause diversion of any of Merchant's card transactions from Processor to another processor; (iii) change its arrangements with Processor or amend the

Merchant Processing Agreement in any way that is adverse to SFSI; (iv) add card processing terminals; (v) use multiple card processing terminals; (vi) change its financial institution or bank account(s) (including, if applicable, the Bridge / Control Account); (vii) take any other action that could have any adverse effect upon Merchant's obligations under this Agreement or SFSI's interest in the Receipts; or (viii) take any action, fail to take any action, or offer any incentive—economic or otherwise—the result of which could be to discourage the use of cards that are settled through Processor, or to induce any customers to pay for Merchant's services with any means other than cards that are settled through Processor, or permit any event to occur that could have an adverse effect on the use, acceptance, or authorization of cards for the purchase of Merchant's services and products.

**2.6 Change of Name or Location.** Merchant will not conduct its businesses under any name other than as disclosed to Processor and SFSI or change any of its places of business.

**2.7 Daily Batch Out.** Merchant will batch out receipts with Processor on a daily basis.

**2.8 Estoppel Certificate.** Merchant will at any time, and from time to time, upon at least one (1) day's prior notice from SFSI to Merchant, execute, acknowledge and deliver to SFSI and/or to any other person, firm or corporation specified by SFSI, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates on which the Purchased Amount or any portion thereof has been paid.

**2.9 No Bankruptcy.** Neither Merchant nor any Owner/Guarantor has filed any petition for bankruptcy protection under Title 11 of the United States Code, no involuntary petition for bankruptcy has been brought or is pending against Merchant or any Owner/Guarantor, neither Merchant nor any Owner/Guarantor has admitted in writing its inability to pay its debts or made a general assignment for the benefit of creditors, and no other proceeding has been instituted by or against Merchant or any Owner/Guarantor seeking to adjudicate it insolvent or seeking reorganization, arrangement, adjustment or composition of it or its debts. Merchant does not anticipate filing any such bankruptcy petition and is not aware and has no reason to believe that any such bankruptcy petition or other proceeding will be filed or brought against it or any Owner/Guarantor.

**2.10 Other Financing.** Merchant shall not enter into any arrangement, agreement or commitment that relates to or involves Receipts, whether in the form of a purchase (such as a merchant cash advance) of, a loan against, or the sale or purchase of credits against, any Receipts, cash deposits or future card or mobile payment sales with any party other than SFSI without its written permission.

**2.11 Unencumbered Receipts.** Merchant has good and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of, SFSI.

**2.12 Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

**2.13 Default Under Other Contracts.** Merchant's execution of or performance under this Agreement will not cause or create any breach or default by Merchant under any contract with another person or entity.

**2.14 Delivery of Confession of Judgment.** Upon execution of this Agreement, Merchant shall, if requested by SFSI, deliver to SFSI an executed Confession of Judgment (the "Confession of Judgment"), in the form provided by SFSI, in favor of SFSI in the amount of the Purchased Amount.

**2.15 Delivery of Assignment of Lease.** Merchant and each Owner/Guarantor authorize SFSI to receive pertinent information regarding the commercial lease for the physical location(s) of Merchant's business (the "Premises") from any applicable leasing company and or agent. Merchant may be asked to deliver to SFSI an executed Assignment of Lease assigning all of Merchant's right, title and interest in and to the Premises and under the lease for the Premises to SFSI (the "Assignment of Lease").

**2.16 Sale of Business.** Merchant shall not sell, dispose, transfer or otherwise convey its business or assets without (i) the express prior written consent of SFSI, and (ii) the written agreement of any purchaser or transferee assuming all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to SFSI.

**2.17 Bridge / Control Account.** If Merchant is required to open a Bridge / Control Account, (i) Merchant will not, unless otherwise directed in writing by SFSI, take any action to cause the Specified Percentage of the settlement amounts to be settled or delivered to any account other than the Bridge / Control Account and (ii) Merchant will at all times maintain the Minimum Balance in the Bridge / Control Account.

**2.18 Use of Proceeds.** Merchant will conduct its business and use the Purchase Price in the ordinary course of its business, consistent with past practice.

**2.19 Accuracy of Information.** All information provided by Merchant and each Owner/Guarantor to SFSI herein, in the Merchant Security Agreement and Guaranty, and in all other documents executed in connection with such agreements or related to such agreements is true, accurate and complete in all respects.

**III. EVENTS OF DEFAULT AND REMEDIES**

**3.1 Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder: (a) Merchant or any Owner/Guarantor violates any term, covenant or condition in this Agreement, the Merchant Security Agreement and Guaranty or any other agreement with SFSI; (b) any representation or warranty by Merchant or any Owner/Guarantor in this Agreement, the Merchant Security Agreement and Guaranty or any other agreement with SFSI shall prove to have been incorrect, incomplete, false or misleading in any material respect when made; (c) Merchant or any Owner/Guarantor admits in writing its inability to pay its debts, or makes a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against Merchant or any Owner/Guarantor seeking to adjudicate it bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts; (d) any Owner/Guarantor sends a notice of termination of the Merchant Security Agreement and Guaranty; (e) Merchant suspends, dissolves or terminates its business; (f) Merchant sells or sends notice of any intended bulk sale or transfer by Merchant; (h) Merchant performs any act that encumbers the cash flow of the business placing undue stress on the viability of the operations and reduces the value of the Collateral or the security interest granted in the Collateral under the Merchant Security Agreement and Guaranty; (i) any Owner/Guarantor performs any act that reduces the value of the Additional Collateral (as defined in the Merchant Security Agreement and Guaranty) or the security

interest granted in the Additional Collateral under the Merchant Security Agreement and Guaranty; or (j) Merchant or any Owner/Guarantor files any petition for bankruptcy under the United States code or an involuntary petition for bankruptcy has been brought or is pending against Merchant or any Owner/Guarantor; (k)Merchant or any Owner/Guarantor defaults under any of the terms, covenants and conditions of any other agreement with SFSI including those with affiliated / associated businesses.

**3.2 Remedies.** Upon the occurrence of an Event of Default, SFSI is not waived pursuant to Section 4.4 hereof, SFSI may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the performance of Merchant's and each Owner's/Guarantor's obligations hereunder, under the Merchant Security Agreement and Guaranty, or pursuant to any other legal or equitable right or remedy. Upon SFSI's notice to Merchant of any Event of Default, the entire Receipts Purchased Amount and unpaid fees not already paid to SFSI shall become immediately due and payable to SFSI. In addition, upon an Event of Default (i) SFSI may enforce the provisions of the Merchant Security Agreement and Guaranty against each Owner/Guarantor; (ii) SFSI may enforce its security interest in the Collateral and Additional Collateral; (iii) SFSI may debit Merchant's deposit accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise; (iv) SFSI may enter the Confession of Judgment as a judgment with the appropriate Clerk of Court and execute thereon; and (v) SFSI may exercise its rights under the Assignment of Lease. All rights, powers and remedies of SFSI in connection with this Agreement and the Merchant Security Agreement and Guaranty may be exercised at any time by SFSI after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.3 Costs.** Merchant and each Owner/Guarantor shall pay to SFSI all costs reasonably incurred by SFSI in connection with (a) any Event of Default including without limitation any breach by Merchant or any Owner/Guarantor of the representations, warranties and covenants in this Agreement or the Merchant Security Agreement and Guaranty, and (b) the enforcement of SFSI's remedies set forth in Section 3.2 hereof, including, but not limited to court costs and attorneys' fees.

**3.4 Required Notifications.** Merchant and each Owner/Guarantor shall give SFSI written notice within 24 hours of any filing by Merchant or any Owner/Guarantor under Title 11 of the United States Code or of the occurrence of any other event described in Section 3.1(c) hereof. Merchant shall give SFSI seven days' written notice prior to the closing of any sale of all or substantially all of Merchant's assets or stock. Merchant shall give SFSI seven days' written notice prior to the suspension, dissolution or termination its business.

**3.5 Default Fee.** Upon the occurrence of any Event of Default, and written notice to Merchant thereof, Merchant shall pay to SFSI a default fee ("Default Fee") of $2,500. This Default Fee shall be payable on demand and stand in addition to any other fees or penalties outlined within this Agreement, the Merchant Security Agreement or Guaranty.

**3.6 Processor Change Fee.** Merchant shall pay a processor change fee (the "Processor Change Fee") to SFSI in the amount of $5,000.00 in the event that Merchant (i) uses multiple card processing terminals without the prior written consent of SFSI, (ii) changes its card processor without the prior written consent of SFSI or (iii) directs Processor to deliver settlement

amounts to any account other than the Bridge / Control Account (if Merchant is required to open a Bridge / Control Account). Such Processor Change Fee (i) shall be due and payable to SFSI on demand, (ii) is not exclusive of, and is cumulative with, any other fee or amount paid or payable to SFSI by Merchant pursuant to this Agreement or the Merchant Security Agreement and Guaranty; and (iii) shall not be construed as a waiver of any Event of Default hereunder or under the Merchant Security Agreement and Guaranty or as otherwise operating to reduce or limit SFSI's rights or remedies provided for hereunder, under the Merchant Security Agreement and Guaranty or at law or in equity.

**3.7 Miscellaneous Service Fees.** Merchant shall pay certain fees for services related to the origination and maintenance of accounts which may include but not be limited to: Merchant funding is done electronically to their designated bank account and charged a fee of $30.00 for a Fed Wire or $12.50 for an ACH. The fee for underwriting and origination is $295.00 paid from the funded amount. If Merchant is utilizing a Bridge / Control Account, there is an upfront fee of $395.00 for the bank fees and administrative costs of maintaining such account for each cash advance agreement with Merchant. Fund transfers from Bridge / Control Accounts to Merchant's operating bank account will be charged $7.50 per month via ACH. Merchant will be charged $35.00 for each change of its operating bank account once active with SFSI. Any administrative adjustments associated with changes to the Specified Percentage will incur a fee of $50.00 per occurrence.

INITIALS: _[initials]_

## IV. MISCELLANEOUS

**4.1 Modifications; Agreements.** No modification, amendment, or waiver of any provision of, or consent to any action under, this Agreement or the Merchant Security Agreement and Guaranty shall be effective unless the same is in writing and signed by SFSI.

**4.2 Assignment.** SFSI may assign its rights and/or obligations under this Agreement and/or the Merchant Security Agreement and Guaranty in whole or in part without prior notice to Merchant or any Owner/Guarantor, including, without limitation, its right to receive all or any portion of the Purchased Amount and its obligation to fund all or any portion of the Purchase Price. Merchant acknowledges that, if any such assignment is made, parties other than SFSI may have the right to exercise rights or remedies against Merchant pursuant to this Agreement. Merchant shall not have, and no Owner/Guarantor shall have, the right to assign its rights and/or obligations under this Agreement and/or the Merchant Security Agreement and Guaranty or any interest herein or therein without the prior written consent of SFSI, which consent may be withheld in SFSI's sole discretion.

**4.3** All notices, requests, consent, demands and other communications hereunder and under the Merchant Security Agreement and Guaranty shall be delivered by ordinary mail, effective upon mailing, to the respective parties to this Agreement and the Merchant Security Agreement and Guaranty at the addresses set forth in this Agreement and shall become effective only upon receipt. The Parties hereto may also send such notices, requests, consent, demands and other communications via facsimile ("FAX") or electronic mail ("Email") at such FAX numbers and email addresses communicated by the parties hereto in writing.

**4.4 Waiver Remedies.** No failure on the part of SFSI to exercise, and no delay in exercising, any right under this Agreement or the Merchant Security Agreement and Guaranty shall operate as a waiver thereof, nor shall

any single or partial exercise of any right under this Agreement or the Merchant Security Agreement and Guaranty preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder and under the Merchant Security Agreement and Guaranty are cumulative and not exclusive of any remedies provided by law or equity.

**4.5 Solicitations.** Merchant and each Owner/Guarantor authorizes SFSI and its affiliates to communicate with, solicit and for market to Merchant and each Owner/Guarantor via regular mail, telephone, email and facsimile in connection with the provision of goods or services by SFSI, its affiliates or any third party that SFSI shares, transfers, exchanges, discloses or provides information with and will hold SFSI, its affiliates and such third parties harmless against any and all claims pursuant to the federal CAN-SPAM Act of 2003 (Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003), the Telephone Consumer Protection Act (TCPA), and any and all other state or federal laws relating to transmissions or solicitations by and any of the methods described above.

**4.6 Terminated Merchant File and Match File.** Merchant expressly acknowledges that a Terminated Merchant File ("TMF"), or any successor thereto, is maintained by MasterCard or VISA containing the business name and names and identification of principals of merchants which have been terminated for one or more of the reasons specified in MasterCard or VISA operating regulations. Such reasons include, but are not limited to, fraud, counterfeit drafts, unauthorized transactions, excessive charge-backs and retrieval requests, money laundering, or where a high security risk exists. MERCHANT ACKNOWLEDGES THAT PROCESSOR AND SFSI ARE REQUIRED TO REPORT THE BUSINESS NAME OF MERCHANT AND THE NAMES AND IDENTIFICATION OF ITS PRINCIPALS TO THE TMF WHEN A MERCHANT IS TERMINATED FOR ONE OR MORE OF THE REASONS SPECIFIED IN MASTERCARD OR VISA OPERATING REGULATIONS. MERCHANT EXPRESSLY AGREES AND CONSENTS TO SUCH REPORTING BY PROCESSOR AND SFSI AND RELEASES EACH FROM ANY DAMAGES FOR DOING SO IN GOOD FAITH.

**4.7 Binding Effect; Governing Law, Venue and Jurisdiction.** This Agreement and the Merchant Security Agreement and Guaranty shall be binding upon and inure to the benefit of Merchant, each Owner/Guarantor, SFSI and their respective successors and assigns. This Agreement and the Merchant Security Agreement and Guaranty shall be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable conflicts of law principles. Any suit, action or proceeding arising hereunder or under the Merchant Security Agreement and Guaranty, or the interpretation, performance or breach hereof or thereof, shall, if SFSI so elects, be instituted in any court sitting in New York, New York, (the "Acceptable Forum") Each of Merchant and each Owner/Guarantor agrees that any state or federal court sitting in the Acceptable Forum is convenient to it, hereby irrevocably and unconditionally submits to the personal jurisdiction of any such court and hereby waives any and all objections to jurisdiction or venue. Each of Merchant and each Owner/Guarantor agrees that a final judgment in any such suit, action or proceeding brought in any such court shall be conclusive and binding upon such party and may be enforced in any other courts to whose jurisdiction such party is or may be subject, by suit upon such judgment. Should such suit, action or proceeding be initiated in any other forum, Merchant and each Owner/Guarantor waive any right to oppose any motion or application made by SFSI to transfer such suit, action or proceeding to the Acceptable Forum.

**4.8 Survival of Representation, etc.** All representations, warranties and covenants herein and in the Merchant Security Agreement and Guaranty shall survive the execution and delivery of this Agreement and the Merchant Security Agreement and Guaranty and shall continue in full force until all obligations under this Agreement and the Merchant Security Agreement and Guaranty shall have been satisfied in full and this Agreement and the Merchant Security Agreement and Guaranty shall have terminated.

**4.9 Severability.** In case any of the provisions in this Agreement or the Merchant Security Agreement and Guaranty is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein or therein shall not in any way be affected or impaired.

**4.10 Entire Agreement.** Any provision hereof or of the Merchant Security Agreement and Guaranty prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof or thereof. This Agreement and the Merchant Security Agreement and Guaranty embody the entire agreement between Merchant, each Owner/Guarantor and SFSI and supersede all prior agreements and understandings relating to the subject matter hereof.

**4.11 JURY TRIAL WAIVER. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THIS AGREEMENT OR THE MERCHANT SECURITY AGREEMENT AND GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY OR THE ENFORCEMENT HEREOF OR THEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY, VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH ITS ATTORNEYS.**

**4.12 CLASS ACTION WAIVER. THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST ANY OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW. TO THE EXTENT ANY PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST ANOTHER PARTY, THE PARTIES HERETO AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOTWITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT OR THE MERCHANT SECURITY AGREEMENT AND GUARANTY); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.**

INITIALS: _[initials]_

**4.13** Counterparts Facsimile and PDF Acceptance.

This Agreement and the Merchant Security Agreement and Guaranty may be executed in counterparts, each of which shall constitute an original, but all of which together shall constitute one instrument. Signatures on this Agreement and the Merchant Security Agreement and Guaranty sent by facsimile or PDF will be treated as original signatures for all purposes.

INITIALS: _____

STRATEGIC FUNDING SOURCE, INC - MERCHANT SECURITY AGREEMENT AND GUARANTY

Merchant's Legal Name: b2 Salon, LLC                    D/B/A: b2 Salon (Egg Harbor)

Physical Address: 201 Egg Harbor Road          City: Sewell          State: NJ          Zip: 08021

Federal ID# Redacted

## SECURITY AGREEMENT

**Security Interest.** To secure Merchant's payment and performance obligations to SFSI under the Merchant Cash Advance Agreement between Merchant and SFSI (the "Merchant Agreement"), Merchant hereby grants to SFSI a security interest in all personal property of Merchant, including all accounts, chattel paper, cash, deposit accounts, documents, equipment, general intangibles, instruments, inventory, or investment property, as those terms are defined in Article 9 of the Uniform Commercial Code of the State of New York as amended (the "UCC"), whether now or hereafter owned or acquired by Merchant and wherever located; and all proceeds of such property, as that term is defined in Article 9 of the UCC (collectively, the "Collateral").

**Cross-Collateral.** To secure Guarantor's payment and performance obligations to SFSI under this Merchant Security Agreement and Guaranty (this "Agreement"), each Guarantor hereby grants SFSI a security interest in _____ Lexxa, Inc (d/b/a Bernard's Salon & Spa (Cherry Hill)), Bernard's of Marlton LLC (d/b/a Bernard's Salon & Spa (Marlton)), b2 Salon, LLC (d/b/a b2 Salon (South Broad)), b2 Salon, LLC (d/b/a b2 Salon (Haddonfield)) _____ (the "Additional Collateral"). Each Guarantor agrees and acknowledges that SFSI will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement.

Each of Merchant and each Guarantor agrees to execute any documents or take any action in connection with this Agreement as SFSI deems necessary to perfect or maintain SFSI's first priority security interest in the Collateral and Additional Collateral, including the execution of any control agreements. Each of Merchant and each Guarantor hereby authorizes SFSI to file any financing statements deemed necessary by SFSI to perfect or maintain SFSI's security interest, which financing statements may contain notification that Merchant and each Guarantor have granted a negative pledge to SFSI with respect to the Collateral and Additional Collateral, and that any subsequent lender or lienor may be tortiously interfering with SFSI's rights. Merchant and each Guarantor shall be jointly and severally liable for and shall pay to SFSI upon demand all costs and expenses, including but not limited to attorneys' fees, which may be incurred by SFSI in protecting, preserving and enforcing SFSI's security interest and rights.

**Negative Pledge.** Each of Merchant and each Guarantor agrees not to create, incur, assume, or permit to exist, directly or indirectly, any additional cash advances, loans, lien or other encumbrance on or with respect to any of the Collateral or Additional Collateral, as applicable without written permission of SFSI.

**Consent to Enter Premises and Assign Lease.** SFSI shall have the right to cure Merchant's default in the payment of rent for the Premises on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, SFSI may exercise its rights and remedies under the Assignment of Lease. Merchant also agrees that SFSI may enter into an agreement with Merchant's landlord giving SFSI the right: (a) to enter the Premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and (b) to assign Merchant's lease to another qualified merchant capable of operating a business comparable to Merchant's at the Premises.

**Remedies.** Upon any Event of Default, SFSI may pursue any remedy available at law (including those available under the provisions of the UCC) or in equity to collect, enforce, or satisfy any obligations then owing to SFSI, whether by acceleration or otherwise.

## GUARANTY

**Performance Guaranty.** Each undersigned Guarantor ("Guarantor") hereby unconditionally guarantees to SFSI the payment and performance by Merchant of all of its obligations under this Agreement and the Merchant Agreement, as such agreement may be renewed, amended, extended or otherwise modified from time to time (the "Guaranteed Obligations"). Guarantor shall be liable for and SFSI may collect all costs and expenses, including, but not limited to attorneys' fees, which may be incurred by SFSI in connection with the collection of any or all of the Guaranteed Obligations from Guarantor or the enforcement of this Agreement.

**Guarantor Waivers.** In the event that Merchant fails to make a payment when due or otherwise perform under the Merchant Agreement, SFSI may enforce its rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral SFSI may hold pursuant to this Agreement or any other guaranty.

SFSI does not have to notify Guarantor of any of the following events and Guarantor will not be released from any of its obligations to SFSI if it is not notified of: (i) Merchant's failure to pay timely any amount owed under the Merchant Agreement; (ii) any material or adverse change in Merchant's financial condition or business operations; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations, including without limitation the Collateral or Additional Collateral, or any other guarantee of the Guaranteed Obligations; (iv) SFSI's acceptance of this Agreement; or (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to SFSI. In addition, SFSI may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to SFSI; (ii) release Merchant from its obligations to SFSI; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations, including without limitation the Collateral or Additional Collateral, in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Purchased Amount and Merchant's other obligations to SFSI under the Merchant Agreement and this Agreement are paid and performed in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation ; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that SFSI must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount. Guarantor agrees that its obligations under this Agreement shall be irrevocable and shall be unconditional irrespective of any circumstance that might otherwise operate as a legal or equitable discharge of a guarantor or a defense of a guarantor.

**Guarantor Acknowledgement.** Guarantor acknowledges that: (i) he/she understands the seriousness of the provisions of this Agreement and that any misrepresentation may constitute fraud; (ii) he/she has had a full opportunity to consult with counsel of his/her choice; and (iii) he/she has consulted with counsel of his/her choice or has decided not to avail himself/herself of that opportunity.

**Joint and Several Liability.** The obligations hereunder of each Guarantor are joint and several.

INITIAL: _[signature]_

Page 6 of 7

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT CASH ADVANCE AGREEMENT", INCLUDING THE "MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS AGREEMENT. CAPITALIZED TERMS NOT DEFINED IN THIS AGREEMENT SHALL HAVE THE MEANINGS SET FORTH IN THE MERCHANT CASH ADVANCE AGREEMENT, INCLUDING THE MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS.

**MERCHANT #1**
By Anthony Rossano Jr.
_____
(Print Name and Title)

SS# Redacted

**MERCHANT #2**
By Carla Rossano
_____
(Print Name and Title)

SS# Redacted

**OWNER/GUARANTOR #1**
By Anthony Rossano Jr.
_____
(Print Name and Title)

SS# Redacted

**OWNER/GUARANTOR #2**
By Carla Rossano
_____
(Print Name and Title)

SS# Redacted

_____
(Signature)
Drivers License Number: Redacted

_____
(Signature)
Drivers License Number: __

_____
(Signature)
Drivers License Number: Redacted

_____
(Signature)
Drivers License Number: __

Sign Here

Sign Here

Sign Here

Sign Here

Page 7 of 7

# Exhibit D

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

DEPARTMENT OF TREASURY
UCC SECTION
FILED

2011 MAR -8 P 5:00

5195353 4
2595353-4

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Phone:(800) 331-3282 Fax: (818) 662-4141

**B. SEND ACKNOWLEDGEMENT TO: (Name and Address)**  20385 STRATEGIC FUND

CT Lien Solutions  27483215
P.O. Box 29071
Glendale, CA 91209-9071  NJNJ

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| B2 SALON, LLC | | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| | | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 201 Egg Harbor Road | Sewell | NJ | 08021 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | LLC | NJ | 0600350821 | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| b2 Salon | | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| | | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 201 Egg Harbor Road | Sewell | NJ | 08021 | USA |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | DBA | NJ | | ☒ NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Strategic Funding Source, Inc. | | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| | | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1501 Broadway, Suite 360 | New York | NY | 10036 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

Accounts, accounts receivable, contracts, real property leases, notes, bills, acceptances, chooses in action, chattel paper, instruments, documents and other forms of obligations at any time owing to the Grantor arising out of goods sold or leased or for services rendered by Grantor, the proceeds thereof and all of Grantor's rights with respect to any goods represented thereby, whether or not delivered, goods returned by customers and all rights as an unpaid vendor or lienor, including rights of stoppage in transit and of recovering possession by proceedings including replevin and reclamation, together with all customer lists, books and records, ledger and account cards, computer tapes, software, disks, printouts and records, whether now in existence or hereafter created, relating thereto (collectively referred to hereinafter as "Receivables"); Inventory, including without limitation, all goods manufactured or acquired for sale or lease, and any piece goods, raw materials, work in process and finished merchandise, findings or component materials, and all supplies, goods, incidentals, office supplies, packaging materials and any and all items used or consumed in the operation of the business of Grantor or which may contribute to the finished product or to the sale, promotion and shipment thereof, in which Grantor now or at any time hereafter may have an interest, whether or not the same is in transit or in the constructive, actual or exclusive occupancy or possession of Grantor or is held by Grantor or by others for Grantor's account (collectively referred to hereinafter as "Inventory"); Goods, including without limitation, all machinery, equipment, parts, supplies, apparatus, appliances, tools, fittings, furniture, furnishings, fixtures and articles of tangible personal property of every description now or hereafter owned by the Grantor or in which Grantor may have or may hereafter acquire any interest, at any location (collectively referred to hereinafter as "Equipment"); General intangibles in which the Grantor now has or hereafter acquires any rights, including but not limited to, causes of action, corporate or business records, inventions, designs, patents, patent applications, trademarks, trademark registrations and applications therefor, goodwill, trade names, trade secrets, trade processes, copyrights, copyright registrations and applications therefor, licenses, permits, franchises, customer lists, computer Continued on addendum.

| 5. ALTERNATIVE DESIGNATION [if applicable] | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

**8. OPTIONAL FILER REFERENCE DATA**
27483215  17884

ACKNOWLEDGMENT COPY - NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Prepared by CT Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

# FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| 9a. ORGANIZATION'S NAME |
|---|

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|

**10. MISCELLANEOUS**

27483215-NJ-0

20385 STRATEGIC FUND

File with: New Jersey        17884

ZON MD -8  P  :00

2595353-4

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names**

| 11a. ORGANIZATION'S NAME |
|---|

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 11d. SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**12** ☐ ADDITIONAL SECURED PARTY'S  or  ☐ ASSIGNOR S/P's  NAME - insert only one name (12a or 12b)

| 12a. ORGANIZATION'S NAME |
|---|

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral or is filed as a ☐ fixture filing.

**14.** Description of real estate:

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**16. Additional collateral description:**

programs, all claims under guaranties, tax refund claims, rights and claims against carriers and shippers, leases, claims under insurance policies, all rights to indemnification and all other intangible personal property and intellectual property of every kind and nature (collectively referred to hereinafter as "Intangibles"); All the capital stock, bonds, notes, partnership interests, member interests in limited liability companies, and other securities, if any, held of record or beneficially by the Grantor, including without limitation the capital stock of all subsidiaries of the Grantor, and the Grantor's interests in all securities brokerage accounts (collectively referred to hereinafter as "Investments"); All cash on hand and on deposit in banks, trust companies and similar institutions, and all property accounted for in the Grantor's financial statements as "cash equivalents" (collectively referred to hereinafter as "Cash"); All accessions to, substitutions for and all replacements, products and proceeds of the Receivables, Inventory, Equipment, Intangibles, Investments and Cash (collectively referred to hereinafter as "Collateral"), including without limitation proceeds of insurance policies insuring the Collateral; and Books and records relating to any of the Collateral (including without limitation, customer data, credit files, computer programs, printouts, and other computer materials and records of the Grantor pertaining to any of the

**17.** Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction
☐ Filed in connection with a Public-Finance Transaction

ACKNOWLEDGMENT COPY - NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/21/09)

Prepared by CT Lien Solutions, P.O. Box 29071
Glendale, CA 91209-9071 Tel (800) 331-3282

# FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION'S NAME

OR

9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX

10. MISCELLANEOUS

27483215-NJ-0

20385 STRATEGIC FUND

File with:  New Jersey        17884

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 11d. SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

12. ☐ ADDITIONAL SECURED PARTY'S  or  ☐ ASSIGNOR S/P's  NAME - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral or is filed as a ☐ fixture filing.

14. Description of real estate:

16. Additional collateral description:

foregoing).    NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN. THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCER IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE. THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEROF RECEIVED BY SUCH ENTITY.

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.

Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust  or ☐ Decedent's Estate

18. Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction

☐ Filed in connection with a Public-Finance Transaction

ACKNOWLEDGMENT COPY - NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/21/09)

Prepared by CT Lien Solutions, P.O. Box 29071
Glendale, CA 91209-9071 Tel (800) 331-3282

# Exhibit E



Contract# 87761
Sales Partner: Capital Solutions
/ John Aitkens

## MERCHANT CASH ADVANCE AGREEMENT

Agreement dated **January** **11** **2012** between Strategic Funding Source Inc. ("SFSI") and the merchant listed below ("the Merchant").
(Month)   (Day)   (Year)

### MERCHANT INFORMATION

Merchant's Legal Name: b2 Salon, LLC

D/B/A: b2 Salon (Haddonfield)                State of Incorporation/organization: NJ

Type of entity: ( ) Corporation ( X ) Limited Liability Company ( ) Limited Partnership ( ) Limited Liability Partnership ( ) Sole Proprietor

Physical Address: 926 Haddonfield Road          City: Cherry Hill          State: NJ          Zip: 08002

Mailing Address:                    City:              State:          Zip:

Date business started (mm/yy): 02/11       Federal ID# *Redacted*

Monthly Total Sales _____     Monthly Card Sales _____     Monthly Cash Sales _____

### PURCHASE AND SALE OF FUTURE RECEIPTS

Merchant hereby sells, assigns and transfers to SFSI (making SFSI the absolute owner) in consideration of the purchase price specified below (the "Purchase Price"), all of Merchant's future accounts, contract rights and other rights to payment arising from or relating to the use by Merchant's customers of cash, credit cards, charge cards, debit cards, prepaid cards, mobile payments and other similar payment methods in the ordinary course of Merchant's business (the "Receipts") for the payment of Merchant's sale of goods or rendition of services until the purchased amount specified below (the "Purchased Amount") has been delivered by Merchant to SFSI, provided that the Purchase Price, the Specified Percentage (as defined below) and/or the Purchased Amount may be adjusted by SFSI and Merchant in writing if one or more card processing conditions are not satisfied.

The Purchased Amount shall be paid to SFSI by Merchant's irrevocably authorizing only one card processor acceptable to SFSI ("Processor") to remit to or for the benefit of SFSI the percentage specified below (the "Specified Percentage") of Merchant's settlement amounts due from each card issuer with respect to the Receipts, until such time as SFSI receives payment in full of the Purchased Amount. Furthermore Merchant will not enter into another cash advance agreement or any other type of factoring agreement during the term of this contract. Notwithstanding anything to the contrary in this Agreement or any other agreement between SFSI and Merchant, upon the occurrence of an Event of Default under Section 3 of the MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%.

Purchase Price: $18,000.00          Specified Percentage: 20 %          Receipts Purchased Amount: $23,382.00

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS", THE "MERCHANT SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM" EACH OF WHICH IS ATTACHED HERETO, ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS AGREEMENT.

MERCHANT #1
By Carla Rossano                                    _____  → Sign Here
            (Print Name and Title)                        (Signature)

MERCHANT #2
By Anthony Rossano Jr.                                _____  → Sign Here
            (Print Name and Title)                        (Signature)

OWNER/GUARANTOR #1
By Carla Rossano                                    _____  → Sign Here
            (Print Name)                                  (Signature)

OWNER/GUARANTOR #2
By Anthony Rossano Jr.                                _____  → Sign Here
            (Print Name)                                  (Signature)

STRATEGIC FUNDING SOURCE, INC.

By _____        Associate Name _____
        (Strategic Funding Source, Inc. Officer)                    (Signature)

Each person signing this Agreement on behalf of Merchant represents that he or she is authorized to sign this Agreement on behalf of Merchant, and each person signing this Agreement on behalf of Merchant and/or as Owner/Guarantor represents that the information provided herein and in all of SFSI's forms is true, accurate and complete in all respects. SFSI may produce a monthly statement reflecting the delivery of the Specified Percentage of Receipts from Merchant to SFSI via Processor.

ANY MISREPRESENTATION MADE BY MERCHANT OR ANY OWNER/GUARANTOR IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.

Page 1 of 7

## MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS

### I. TERMS OF ENROLLMENT IN PROGRAM

1.1 **Merchant Cash Advance Agreement.** These terms and conditions shall be incorporated in and made a part of the attached Merchant Cash Advance Agreement (such Merchant Cash Advance Agreement, as supplemented by these terms and conditions, this "Agreement").

1.2 **Merchant Processing Agreement.** Merchant shall execute an agreement (the "Merchant Processing Agreement") acceptable to SFSI, with a card processor acceptable to SFSI, to obtain card processing services. Merchant shall authorize Processor to deduct the amounts owed to SFSI for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from Processor and transactions and to pay such amounts to SFSI pursuant to SFSI's instructions to Processor. The authorization shall be irrevocable without the written consent of SFSI. Processor may rely upon the instructions of SFSI, without any independent verification, in making such deductions and payments, and Merchant waives any claims for damages it may have against Processor in connection with such acts unless such damages were due to Processor's failure to follow SFSI's instructions.

1.3 **Purchase Price Reduction.** SFSI may, in its sole discretion, reduce the Purchase Price if one or more card processing conditions are not satisfied.

1.4 **Bridge / Control Account.** Merchant may be required to open a new bank account into which 100% of the settlement amounts will be deposited and the Specified Percentage collected by SFSI (the "Bridge / Control Account"). Merchant appoints SFSI as "Acting Agent" over the Bridge / Control Account, and shall instruct Processor to designate the Bridge / Control Account as the deposit account for all of Merchant's customers' card transactions. Merchant assumes all responsibility for all fees, costs, charge-backs or suspicious items processed through the Bridge / Control Account (see "Miscellaneous Service Fees" paragraph 3.7). Merchant agrees to maintain a minimum balance in the Bridge / Control Account (the "Minimum Balance") equal to the per-month average of all fees charged to Merchant by Processor, averaged over a six-month period.

1.5 **Financial Condition.** Merchant and each Owner/Guarantor authorize SFSI, its agents and representatives, and any credit reporting agency engaged by SFSI, to investigate their creditworthiness, financial responsibility and history, and they agree to provide SFSI any financial statements, tax returns, references, or other credit or financial information as SFSI deems necessary prior to or after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of credit and financial information. Merchant and each Owner/Guarantor authorize SFSI to update their credit and financial profile from time to time in the future, as SFSI deems appropriate. An investigative or consumer report may be made or obtained in connection with this Agreement.

1.6 **Transactional History.** Merchant authorizes Processor and each of Merchant's banks to provide SFSI upon request with Merchant's card history or bank statements, as applicable.

1.7 **Indemnification.** Merchant and each Owner/Guarantor jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by SFSI for monies owed to SFSI from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by SFSI.

1.8 **No Liability.** In no event will Processor or SFSI be liable for any claims asserted by Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by Merchant and each Owner/Guarantor.

1.9 **Reliance on Terms.** Sections 1.2, 1.7, 1.8, 2.5, and 4.6 hereof are agreed to for the benefit of Merchant, SFSI and Processor, and notwithstanding the fact that Processor is not a party to this Agreement, Processor may rely upon their terms and raise them as a defense in any action.

1.10 **Sale of Receipts.** Merchant and SFSI intend that the transfer of the interest in the Receipts from Merchant to SFSI constitute a sale, and not a loan, for all purposes. Merchant agrees that the Purchase Price equals the fair market value of such interest. If, notwithstanding such intent, such transfer is not deemed to constitute a sale, Merchant hereby grants to SFSI a security interest in all right, title and interest of Merchant in and to the Receipts, which security interest shall secure the payment of the Purchased Amount and all other obligations of Merchant under this Agreement. In no event shall the aggregate of all amounts deemed interest hereunder and charged or collected hereunder exceed the highest rate permissible at law. In the event that a court determines that SFSI has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and SFSI shall promptly refund to Merchant any interest received by SFSI in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that SFSI not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. Merchant hereby authorizes SFSI to file any financing statements deemed necessary by SFSI to perfect or maintain SFSI's interest in the Receipts.

1.11 **Power of Attorney.** Merchant irrevocably appoints SFSI and any assignee of SFSI as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to SFSI from Processor, or upon the occurrence of an Event of Default under Section 3.1 hereof, to settle all obligations due to SFSI from Merchant, under this Agreement, including, without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under the Contract; (iii) in respect of any of the Collateral (as defined in the Merchant Security Agreement and Guaranty); (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to SFSI; and (v) to file any claim or take any action or institute any proceeding which SFSI may deem necessary for the collection of any unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount.

1.12 **Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner/Guarantor, in respect of himself or herself personally, authorizes SFSI to disclose to any third party information concerning Merchant's and each Owner's/Guarantor's credit standing (including credit bureau reports that SFSI obtains) and business conduct. Merchant and each Owner/Guarantor hereby waive to the maximum extent permitted by law any claim for damages against SFSI or any of its affiliates relating to any (i) investigation undertaken by or on behalf of SFSI as permitted by this Agreement or (ii)

disclosure of information as permitted by this Agreement.

1.13 **Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by SFSI, including this Agreement, the Merchant Security Agreement and Guaranty and any other documents executed in connection with such agreements or related to such agreements (collectively, "Confidential Information") are proprietary and confidential information of SFSI. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to not disclose Confidential Information to any person in accordance with the terms of this Section 1.13.

1.14 **Publicity.** Merchant and each Owner/Guarantor authorize SFSI to use their respective names in a listing of clients and in advertising and marketing materials.

1.15 **D/B/A's.** Merchant and each Owner/Guarantor hereby acknowledge and agree that SFSI may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between SFSI and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

1.16 **Financial Information.** Merchant and each Owner/Guarantor shall provide to SFSI upon request copies of financial statements representing the financial condition of Merchant and/or such Owner/Guarantor.

### II. REPRESENTATIONS, WARRANTIES AND COVENANTS

Merchant and each Owner/Guarantor each represents, warrants and covenants that as of the date of this Agreement and on each date during the term of this Agreement:

2.1 **Financial Condition and Financial Information.** Its financial statements, copies of which have been furnished to SFSI, and any financial statements furnished to SFSI hereafter, fairly represent the financial condition of Merchant and each Owner/Guarantor at such dates, and since those dates there has been no material adverse change, financial or otherwise, in such condition or in the operation or ownership of Merchant. Merchant has a continuing affirmative obligation to advise SFSI of any material adverse change in its financial condition, operation or ownership.

2.2 **Governmental Approvals.** Merchant is and will remain in compliance with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

2.3 **Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to execute this Agreement and to incur and perform the obligations under this Agreement, all of which have been duly authorized.

2.4 **Insurance.** Merchant has and will maintain business-interruption insurance naming SFSI as loss payee and additional insured in such amounts and against such risks as are satisfactory to SFSI and shall provide SFSI proof of such insurance upon request.

2.5 **Merchant Processor Agreement and Arrangements.** Without SFSI's prior written consent, signing this Agreement on behalf of Merchant, have full power and authority to execute this Agreement and to incur and perform the obligations under this Agreement, all of which have been duly authorized will not: (i) change the card processor through which the Receipts are settled from Processor to another card processor, (ii) permit any event to occur that could cause diversion of any of Merchant's card transactions from Processor to another processor; (iii) change its arrangements with Processor or amend the

Merchant Processing Agreement in any way that is adverse to SFSI; (iv) add card processing terminals; (v) use multiple card processing terminals; (vi) change its financial institution or bank account(s) (including, if applicable, the Bridge / Control Account); (vii) take any other action that could have any adverse effect upon Merchant's obligations under this Agreement or SFSI's interest in the Receipts; or (viii) take any action, fail to take any action, or offer any incentive—economic or otherwise—the result of which could be to discourage the use of cards that are settled through Processor, or to induce any customers to pay for Merchant's services with any means other than cards that are settled through Processor, or permit any event to occur that could have an adverse effect on the use, acceptance, or authorization of cards for the purchase of Merchant's services and products.

**2.6 Change of Name or Location.** Merchant will not conduct its businesses under any name other than as disclosed to Processor and SFSI or change any of its places of business.

**2.7 Daily Batch Out.** Merchant will batch out receipts with Processor on a daily basis.

**2.8 Estoppel Certificate.** Merchant will at any time, and from time to time, upon at least one (1) day's prior notice from SFSI to Merchant, execute, acknowledge and deliver to SFSI and/or to any other person, firm or corporation specified by SFSI, a statement certifying that this Agreement is unmodified and in full force and affect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates on which the Purchased Amount or any portion thereof has been paid.

**2.9 No Bankruptcy.** Neither Merchant nor any Owner/Guarantor has filed any petition for bankruptcy protection under Title 11 of the United States Code, no involuntary petition for bankruptcy has been brought or is pending against Merchant or any Owner/Guarantor, neither Merchant nor any Owner/Guarantor has admitted in writing its inability to pay its debts or made a general assignment for the benefit of creditors, and no other proceeding has been instituted by or against Merchant or any Owner/Guarantor seeking to adjudicate it insolvent or seeking reorganization, arrangement, adjustment or composition of it or its debts. Merchant does not anticipate filing any such bankruptcy petition and is not aware and has no reason to believe that any such bankruptcy petition or other proceeding will be filed or brought against it or any Owner/Guarantor.

**2.10 Other Financing.** Merchant shall not enter into any arrangement, agreement or commitment that relates to or involves Receipts, whether in the form of a purchase (such as a merchant cash advance) of a loan against, or the sale or purchase of credits against, any Receipts, cash deposits or future cord or mobile payment sales with any party other than SFSI without its written permission.

**2.11 Unencumbered Receipts.** Merchant has good and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of, SFSI.

**2.12 Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

**2.13 Default Under Other Contracts.** Merchant's execution of or performance under this Agreement will not cause or create any breach or default by Merchant under any contract with another person or entity.

**2.14 Delivery of Confession of Judgment.** Upon execution of this Agreement, Merchant shall, if requested by SFSI, deliver to SFSI an executed Confession of Judgment (the "Confession of Judgment"), in the form provided by SFSI, in favor of SFSI in the amount of the Purchased Amount.

**2.15 Delivery of Assignment of Lease.** Merchant and each Owner/Guarantor authorize SFSI to receive pertinent information regarding the commercial lease for the physical location(s) of Merchant's business (the "Premises") from any applicable leasing company and of agent. Merchant may be asked to deliver to SFSI an executed Assignment of Lease assigning all of Merchant's right, title and interest in and to the Premises and under the lease for the Premises to SFSI (the "Assignment of Lease").

**2.16 Sale of Business.** Merchant shall not sell, dispose, transfer or otherwise convey its business or assets without (i) the express prior written consent of SFSI, and (ii) the written agreement of any purchaser or transferee assuming all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to SFSI.

**2.17 Bridge / Control Account.** If Merchant is required to open a Bridge / Control Account, (i) Merchant will not, unless otherwise directed in writing by SFSI, take any action to cause the Specified Percentage of the settlement amounts to be settled or delivered to any account other than the Bridge / Control Account and (ii) Merchant will at all times maintain the Minimum Balance in the Bridge / Control Account.

**2.18 Use of Proceeds.** Merchant will conduct its business and use the Purchase Price in the ordinary course of its business, consistent with past practice.

**2.19 Accuracy of Information.** All information provided by Merchant and each Owner/Guarantor to SFSI herein, in the Merchant Security Agreement and Guaranty, and in all other documents executed in connection with such agreements or related to such agreements is true, accurate and complete in all respects.

## III. EVENTS OF DEFAULT AND REMEDIES

**3.1 Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder: (a) Merchant or any Owner/Guarantor violates any term, covenant or condition in this Agreement, the Merchant Security Agreement and Guaranty or any other agreement with SFSI; (b) any representation or warranty by Merchant or any Owner/Guarantor in this Agreement, the Merchant Security Agreement and Guaranty or any other agreement with SFSI shall prove to have been incorrect, incomplete, false or misleading in any material respect when made; (c) Merchant or any Owner/Guarantor admits in writing its inability to pay its debts, or makes a general assignment for the benefit of creditors, or any proceeding shall be instituted by or against Merchant or any Owner/Guarantor seeking to adjudicate it bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts; (d) any Owner/Guarantor sends a notice of termination of the Merchant Security Agreement and Guaranty; (e) Merchant suspends, dissolves or terminates its business; (f) Merchant sells all or substantially all of its assets; (g) Merchant makes or sends notice of any intended bulk sale or transfer by Merchant; (h) Merchant performs any act that incumbers the cash flow of the business placing undue stress on the viability of the operations and reduces the value of the Collateral or the security interest granted in the Collateral under the Merchant Security Agreement and Guaranty; (i) any Owner/Guarantor performs any act that reduces the value of the Additional Collateral (as defined in the Merchant Security Agreement and Guaranty) or the security

interest granted in the Additional Collateral under the Merchant Security Agreement and Guaranty; or (j) Merchant or any Owner/Guarantor files any petition for bankruptcy under the United States code or an involuntary petition for bankruptcy has been brought or is pending against Merchant or any Owner/Guarantor; (k) Merchant or any Owner/Guarantor defaults under any of the terms, covenants and conditions of any other agreement with SFSI including those with affiliated / associated businesses.

**3.2 Remedies.** Upon the occurrence of an Event of Default that is not waived pursuant to Section 4.4 hereof, SFSI may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the performance of Merchant's and each Owner/Guarantor's obligations hereunder, under the Merchant Security Agreement and Guaranty, or pursuant to any other legal or equitable right or remedy. Upon SFSI's notice to Merchant of any Event of Default, the entire Receipts Purchased Amount and unpaid fees not already paid to SFSI shall become immediately due and payable to SFSI. In addition, upon an Event of Default (i) SFSI may exercise its rights under the Assignment of Lease and the Merchant Security Agreement and Guaranty against each Owner/Guarantor; (ii) SFSI may enforce its security interest in the Collateral and Additional Collateral; (iii) SFSI may debit Merchant's deposit accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise; (iv) SFSI may enter the Confession of Judgment as a judgment with the appropriate Clerk of Court and execute thereon; and (v) SFSI may exercise its rights under the Assignment of Lease. All rights, powers and remedies of SFSI in connection with this Agreement and the Merchant Security Agreement and Guaranty may be exercised at any time by SFSI after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.3 Costs.** Merchant and each Owner/Guarantor shall pay to SFSI all costs reasonably incurred by SFSI in connection with (a) any Event of Default including without limitation any breach by Merchant or any Owner/Guarantor of the representations, warranties and covenants in this Agreement or the Merchant Security Agreement and Guaranty, and (b) the enforcement of SFSI's remedies set forth in Section 3.2 hereof, including but not limited to court costs and attorneys' fees.

**3.4 Required Notifications.** Merchant and each Owner/Guarantor shall give SFSI written notice within 24 hours of any filing by Merchant or any Owner/Guarantor under Title 11 of the United States Code or of the occurrence of any other event described in Section 3.1(c) hereof. Merchant shall give SFSI seven days' written notice prior to the closing of any sale of all or substantially all of Merchant's assets or stock. Merchant shall give SFSI seven days' written notice prior to the suspension, dissolution or termination of its business.

**3.5 Default Fee.** Upon the Occurrence of any Event of Default, and written notice to Merchant thereof, Merchant shall pay to SFSI a default fee ("Default Fee") of $2,500. This Default Fee shall be payable on demand and stand in addition to any other fees or penalties outlined within this Agreement, the Merchant Security Agreement or Guaranty.

**3.6 Processor Change Fee.** Merchant shall pay a processor change fee (the "Processor Change Fee") to SFSI in the amount of $5,000.00 in the event that Merchant (i) uses multiple card processing terminals without the prior written consent of SFSI, (ii) changes its card processor without the prior written consent of SFSI or (iii) directs Processor to deliver settlement

amounts to any account other than the Bridge / Control Account (if Merchant is required to open a Bridge / Control Account). Such Processor Change Fee (i) shall be due and payable to SPSI on demand, (ii) is not exclusive of, and is cumulative with, any other fee or amount paid or payable to SPSI by Merchant pursuant to this Agreement or the Merchant Security Agreement and Guaranty; and (iii) shall not be construed as a waiver of any Event of Default hereunder or under the Merchant Security Agreement and Guaranty or as otherwise operating to reduce or limit SPSI's rights or remedies provided for hereunder, under the Merchant Security Agreement and Guaranty or at law or in equity.

**3.7 Miscellaneous Service Fees.** Merchant shall pay certain fees for services related to the origination and maintenance of accounts which may include but not be limited to: Merchant funding is done electronically to their designated bank account and charged a fee of $30.00 for a Fed Wire or $12.50 for an ACH. The fee for underwriting and origination is $295.00 paid from the funded amount. If Merchant is utilizing a Bridge / Control Account, there is an upfront fee of $395.00 for the bank fees and administrative costs of maintaining such account for each cash advance agreement with Merchant. Fund transfers from Bridge / Control Accounts to Merchant's operating bank account will be charged $7.50 per month via ACH. Merchant will be charged $35.00 for each change of its operating bank account once active with SPSI. Any administrative adjustments associated with changes to the Specified Percentage will incur a fee of $50.00 per occurance.

INITIALS: _AA_

## IV. MISCELLANEOUS

**4.1 Modification; Agreement.** No modification, amendment, or waiver of any provision of, or consent to any action under, this Agreement or the Merchant Security Agreement and Guaranty shall be effective unless the same is in writing and signed by SPSI.

**4.2 Assignment.** SPSI may assign its rights and/or obligations under this Agreement and/or the Merchant Security Agreement and Guaranty in whole or in part without prior notice to Merchant or any Owner/Guarantor, including, without limitation, its right to receive all or any portion of the Purchased Amount and its obligation to fund all or any portion of the Purchase Price. Merchant acknowledges that, if any such assignment is made, persons other than SPSI may have the right to exercise rights or remedies against Merchant pursuant to this Agreement. Merchant shall not have, and no Owner/Guarantor shall have, the right to assign its rights and/or obligations under this Agreement and/or the Merchant Security Agreement and Guaranty or any interest herein or therein without the prior written consent of SPSI, which consent may be withheld in SPSI's sole discretion.

**4.3** All notices, requests, consent, demands and other communications hereunder and under the Merchant Security Agreement and Guaranty shall be delivered by ordinary mail, effective upon mailing, to the respective parties to this Agreement and the Merchant Security Agreement and Guaranty at the addresses set forth in this Agreement and shall become effective only upon receipt. The Parties herein may also send such notices, requests, consent, demands and other communications via facsimile ("FAX") or electronic mail ("Email") at each FAX numbers and email addresses communicated by the parties hereto in writing.

**4.4 Waiver Remedies.** No failure on the part of SPSI to exercise, and no delay in exercising, any right under this Agreement or the Merchant Security Agreement and Guaranty shall operate as a waiver thereof, nor shall

any single or partial exercise of any right under this Agreement or the Merchant Security Agreement and Guaranty preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder and under the Merchant Security Agreement and Guaranty are cumulative and not exclusive of any remedies provided by law or equity.

**4.5 Solicitations.** Merchant and each Owner/Guarantor authorize SPSI and its affiliates to communicate with, solicit and/or market to Merchant and each Owner/Guarantor via regular mail, telephone, email and facsimile in connection with the provision of goods or services by SPSI, its affiliates or any third party that SPSI shares, transfers, exchanges, discloses or provides information with and will hold SPSI, its affiliates and such third parties harmless against any and all claims pursuant to the Federal CAN-SPAM ACT of 2003 (Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003), the Telephone Consumer Protection Act (TCPA), and any and all other state or federal laws relating to transmissions or solicitations by and any of the methods described above.

**4.6 Terminated Merchant File and Match File.** Merchant expressly acknowledges that a Terminated Merchant File ("TMF"), or any successor thereto, is maintained by MasterCard or VISA containing the business name and names and identification of principals of merchants which have been terminated for one or more of the reasons specified in MasterCard or VISA operating regulations. Such reasons include, but are not limited to, fraud, counterfeit drafts, unauthorized transactions, excessive charge-backs and retrieval requests, money laundering, or where a high security risk exists. MERCHANT ACKNOWLEDGES THAT PROCESSOR AND SPSI ARE REQUIRED TO REPORT THE BUSINESS NAME OF MERCHANT AND THE NAMES AND IDENTIFICATION OF ITS PRINCIPALS TO THE TMF WHEN A MERCHANT IS TERMINATED FOR ONE OR MORE OF THE REASONS SPECIFIED IN MASTERCARD OR VISA OPERATING REGULATIONS. MERCHANT EXPRESSLY AGREES AND CONSENTS TO SUCH REPORTING BY PROCESSOR AND SPSI AND RELEASES EACH FROM ANY DAMAGES FOR DOING SO IN GOOD FAITH.

**4.7 Binding Effect; Governing Law, Venue and Jurisdiction.** This Agreement and the Merchant Security Agreement and Guaranty shall be binding upon and inure to the benefit of Merchant, each Owner/Guarantor, SPSI and their respective successors and assigns. This Agreement and the Merchant Security Agreement and Guaranty shall be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable conflicts of law principles. Any suit, action or proceeding arising hereunder or under the Merchant Security Agreement and Guaranty, or the interpretation, performance or breach hereof or thereof, shall, if SPSI so elects, be instituted in any court sitting in New York, New York (the "Acceptable Forum"). Each of Merchant and each Owner/Guarantor agrees that any state or federal court sitting in the Acceptable Forum is convenient to it, hereby irrevocably and unconditionally submits to the personal jurisdiction of any such court and hereby waives any and all objections to jurisdiction or venue. Each of Merchant and each Owner/Guarantor agrees that a final judgment in any such suit, action or proceeding brought in any such court shall be conclusive and binding upon such party and may be enforced in any other courts to whose jurisdiction such party is or may be subject, by suit upon such judgment. Should such suit, action or proceeding be instituted in any other forum, Merchant and each Owner/Guarantor waive any right to oppose any motion or application made by SPSI to transfer such suit, action or proceeding to the Acceptable Forum.

**4.8 Survival of Representation, etc.** All representations, warranties and covenants herein and in the Merchant Security Agreement and Guaranty shall survive the execution and delivery of this Agreement and the Merchant Security Agreement and Guaranty and shall continue in full force until all obligations under this Agreement and the Merchant Security Agreement and Guaranty shall have been satisfied in full and this Agreement and the Merchant Security Agreement and Guaranty shall have been terminated.

**4.9 Severability.** In case any of the provisions in this Agreement or the Merchant Security Agreement and Guaranty is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein or therein shall not in any way be affected or impaired.

**4.10 Entire Agreement.** Any provision hereof or of the Merchant Security Agreement and Guaranty prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof or thereof. This Agreement and Guaranty embody the entire agreement between Merchant, each Owner/Guarantor and SPSI and supersede all prior agreements and understandings relating to the subject matter hereof.

**4.11 JURY TRIAL WAIVER. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THIS AGREEMENT OR THE MERCHANT SECURITY AGREEMENT AND GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY OR THE ENFORCEMENT HEREOF OR THEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY, VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH ITS ATTORNEYS.**

**4.12 CLASS ACTION WAIVER. THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST ANY OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW. TO THE EXTENT ANY PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST ANOTHER PARTY, THE PARTIES HERETO AGREE THAT (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOTWITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT OR THE MERCHANT SECURITY AGREEMENT AND GUARANTY); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.**

INITIALS: _AA_

4.13 **Counterparts: Facsimile and PDF Acceptance.**

This Agreement and the Merchant Security Agreement
and Guaranty may be executed in counterparts, each of
which shall constitute an original, but all of which
together shall constitute one instrument. Signatures on
this Agreement and the Merchant Security Agreement
and Guaranty sent by facsimile or PDF will be treated
as original signatures for all purposes.

INITIALS:

Page 5 of 7

### STRATEGIC FUNDING SOURCE, INC - MERCHANT SECURITY AGREEMENT AND GUARANTY

Merchant's Legal Name: h2 Salon, LLC      D/B/A: h2 Salon (Haddonfield)

Physical Address: 926 Haddonfield Road     City: Cherry Hill     State: NJ     Zip: 08002

Federal ID# Redacted

## SECURITY AGREEMENT

**Security Interest** To secure Merchant's payment and performance obligations to SFSI under the Merchant Cash Advance Agreement between Merchant and SFSI (the "Merchant Agreement"), Merchant hereby grants to SFSI a security interest in all personal property of Merchant, including all accounts, chattel paper, cash, deposit accounts, documents, equipment, general intangibles, instruments, inventory, or investment property, as those terms are defined in Article 9 of the Uniform Commercial Code of the State of New York as amended (the "UCC"), whether now or hereafter owned or acquired by Merchant and wherever located; and all proceeds of such property, as that term is defined in Article 9 of the UCC (collectively, the "Collateral").

**Cross-Collateral** To secure Guarantor's payment and performance obligations to SFSI under this Merchant Security Agreement and Guaranty (this "Agreement"), each Guarantor hereby grants SFSI a security interest in ___(FIELD0030)___ (the "Additional Collateral"). Each Guarantor agrees and acknowledges that SFSI will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement.

Each of Merchant and each Guarantor agrees to execute any documents or take any action in connection with this Agreement as SFSI deems necessary to perfect or maintain SFSI's first priority security interest in the Collateral and Additional Collateral, including the execution of any control agreements. Each of Merchant and each Guarantor hereby authorizes SFSI to file any financing statements deemed necessary by SFSI to perfect or maintain SFSI's security interest, which financing statements may contain notification that Merchant and each Guarantor have granted a negative pledge to SFSI with respect to the Collateral and Additional Collateral, and that any subsequent lender or lienor may be tortiously interfering with SFSI's rights. Merchant and each Guarantor shall be jointly and severally liable for and shall pay to SFSI upon demand all costs and expenses, including but not limited to attorneys' fees, which may be incurred by SFSI in protecting, preserving and enforcing SFSI's security interest and rights.

**Negative Pledge** Each of Merchant and each Guarantor agrees not to create, incur, assume, or permit to exist, directly or indirectly, any additional cash advances, loans, lien or other encumbrance on or with respect to any of the Collateral or Additional Collateral, as applicable without written permission of SFSI.

**Consent to Enter Premises and Assign Lease.** SFSI shall have the right to cure Merchant's default in the payment of rent for the Premises on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, SFSI may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that SFSI may enter into an agreement with Merchant's landlord giving SFSI the right: (a) to enter the Premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and (b) to assign Merchant's lease to another qualified merchant capable of operating a business comparable to Merchant's at the Premises.

**Remedies.** Upon any Event of Default, SFSI may pursue any remedy available at law (including those available under the provisions of the UCC) or in equity to collect, enforce, or satisfy any obligations then owing to SFSI, whether by acceleration or otherwise.

## GUARANTY

**Performance Guaranty.** Each undersigned Guarantor ("Guarantor") hereby unconditionally guarantees to SFSI the payment and performance by Merchant of all of its obligations under this Agreement and the Merchant Agreement, as each agreement may be renewed, amended, extended or otherwise modified from time to time (the "Guaranteed Obligations"). Guarantor shall be liable for and SFSI may charge and collect all costs and expenses, including but not limited to attorneys' fees, which may be incurred by SFSI in connection with the collection of any or all of the Guaranteed Obligations from Guarantor or the enforcement of this Agreement.

**Guarantor Waivers.** In the event that Merchant fails to make a payment when due or otherwise perform under the Merchant Agreement, SFSI may enforce its rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral SFSI may hold pursuant to this Agreement or any other guaranty.

SFSI does not have to notify Guarantor of any of the following events and Guarantor will not be released from any of its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay timely any amount owed under the Merchant Agreement; (ii) any material or adverse change in Merchant's financial condition or business operations; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations, including without limitation the Collateral or Additional Collateral, or any other guarantee of the Guaranteed Obligations; (iv) SFSI's acceptance of this Agreement; or (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to SFSI. In addition, SFSI may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement; (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to SFSI; (ii) release Merchant from its obligations to SFSI; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations, including without limitation the Collateral or Additional Collateral, in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Purchased Amount and Merchant's other obligations to SFSI under the Merchant Agreement and this Agreement are paid and performed in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iv) performance; or (v) indemnification; or (v) contribution. In the event that SFSI must return any Amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount. Guarantor agrees that its obligations under this Agreement shall be irrevocable and shall be unconditional irrespective of any circumstance that might otherwise operate as a legal or equitable discharge of a guarantor or a defense of a guarantor.

**Guarantor Acknowledgement.** Guarantor acknowledges that: (i) he/she has read this Agreement and that any misrepresentation may constitute fraud; (ii) he/she has had a full opportunity to consult with counsel of his/her choice; and (iii) he/she has consulted with counsel of his/her choice or has decided not to avail himself/herself of that opportunity.

**Joint and Several Liability.** The obligations hereunder of each Guarantor are joint and several.

INITIAL: _[signature]_

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT CASH ADVANCE AGREEMENT", INCLUDING THE "MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS AGREEMENT. CAPITALIZED TERMS NOT DEFINED IN THIS AGREEMENT SHALL HAVE THE MEANINGS SET FORTH IN THE MERCHANT CASH ADVANCE AGREEMENT, INCLUDING THE MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS.

**MERCHANT #1**
By Carla Rossane
_____
(Print Name and Title)

SS# {FIELD031}

Drivers License Number: {FIELD032}
(Signature)

Sign Here

**MERCHANT #2**
By Anthony Rossane Jr.
_____
(Print Name and Title)

SS# {FIELD034}

Drivers License Number: {FIELD035}
(Signature)

Sign Here

**OWNER/GUARANTOR #1**
By {FIELD036}
_____
(Print Name and Title)

SS# {FIELD037}

Drivers License Number: {FIELD038}
(Signature)

Sign Here

**OWNER/GUARANTOR #2**
By {FIELD039}
_____
(Print Name and Title)

SS# {FIELD040}

Drivers License Number: {FIELD041}
(Signature)

Sign Here

# Exhibit F

MAR 2 2011

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Phone:(800) 331-3282  Fax: (818) 662-4141

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)    20385 STRATEGIC FUND

CT Lien Solutions    27411705
P.O. Box 29071
Glendale, CA 91209-9071    NJNJ

2594906-3

| 1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names | | | | | |
|---|---|---|---|---|---|
| **1a. ORGANIZATION'S NAME** B2 SALON, LLC | | | | | |
| **1b. INDIVIDUAL'S LAST NAME** | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| **1c. MAILING ADDRESS** 926 Haddonfield Road | CITY Cherry Hill | | STATE NJ | POSTAL CODE 08002 | COUNTRY USA |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION LLC | 1f. JURISDICTION OF ORGANIZATION NJ | 1g. ORGANIZATIONAL ID #, if any 0600350821 | NONE |

| 2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names | | | | | |
|---|---|---|---|---|---|
| **2a. ORGANIZATION'S NAME** b2 Salon | | | | | |
| **2b. INDIVIDUAL'S LAST NAME** | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| **2c. MAILING ADDRESS** 926 Haddonfield Road | CITY Cherry Hill | | STATE NJ | POSTAL CODE 08002 | COUNTRY USA |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION DBA | 2f. JURISDICTION OF ORGANIZATION NJ | 2g. ORGANIZATIONAL ID #, if any | X NONE |

| 3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b) | | | | | |
|---|---|---|---|---|---|
| **3a. ORGANIZATION'S NAME** Strategic Funding Source, Inc. | | | | | |
| **3b. INDIVIDUAL'S LAST NAME** | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| **3c. MAILING ADDRESS** 1501 Broadway, Suite 360 | CITY New York | | STATE NY | POSTAL CODE 10036 | COUNTRY USA |

4. This FINANCING STATEMENT covers the following collateral:

Accounts, accounts receivable, contracts, real property leases, notes, bills, acceptances, choses in action, chattel paper, instruments, documents and other forms of obligations at any time owing to the Grantor arising out of goods sold or leased or for services rendered by Grantor, the proceeds thereof and all of Grantor's rights with respect to any goods represented thereby, whether or not delivered, goods returned by customers and all rights as an unpaid vendor or lienor, including rights of stoppage in transit and of recovering possession by proceedings including replevin and reclamation, together with all customer lists, books and records, ledger and account cards, computer tapes, software, disks, printouts and records, whether now in existence or hereafter created, relating thereto (collectively referred to hereinafter as "Receivables"); Inventory, including without limitation, all goods manufactured or acquired for sale or lease, and any piece goods, raw materials, work in process and finished merchandise, findings or component materials, and all supplies, goods, incidentals, office supplies, packaging materials and any and all items used or consumed in the operation of the business of Grantor or which may contribute to the finished product or to the sale, promotion and shipment thereof, in which Grantor now or at any time hereafter may have an interest, whether or not the same is in transit or in the constructive or actual or exclusive occupancy or possession of Grantor or is held by Grantor or by others for Grantor's account (collectively referred to hereinafter as "Inventory"); Goods, including without limitation, all machinery, equipment, parts, supplies, apparatus, appliances, tools, fittings, furniture, furnishings, fixtures and articles of tangible personal property of every description now or hereafter owned by the Grantor or in which Grantor may have or may hereafter acquire any interest, at any location (collectively referred to hereinafter as "Equipment"); General intangibles in which the Grantor now has or hereafter acquires any rights, including but not limited to, causes of action, corporate or business records, inventions, designs, patents, patent applications, trademarks, trademark registrations and applications therefor, goodwill, trade names, trade secrets, trade processes, copyrights, copyright registrations and applications therefor, licenses, permits, franchises, customer lists, computer Continued on addendum.

| 5. ALTERNATIVE DESIGNATION [if applicable] | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | All Debtors | Debtor 1 | Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |
| 27411705 | | 17877 | | | | |

ACKNOWLEDGMENT COPY - NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Prepared by CT Lien Solutions, P.O. Box 29071
Glendale, CA 91209-9071  Tel (800) 331-3282

# FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

| | 9a. ORGANIZATION'S NAME | | |
|---|---|---|---|
| OR | | | |
| | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME SUFFIX |

10. MISCELLANEOUS

27411705-NJ-0

2594906-3

**20385 STRATEGIC FUND**

File with: New Jersey    17877

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names

| | 11a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|---|
| OR | | | | | | |
| | 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 11c. MAILING ADDRESS | | CITY | | STATE | POSTAL CODE | COUNTRY |
| 11d. SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | | NONE |

12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P's NAME - insert only one name (12a or 12b)

| | 12a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 12c. MAILING ADDRESS | | CITY | STATE POSTAL CODE | COUNTRY |

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

14. Description of real estate:

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

16. Additional collateral description:

programs, all claims under guaranties, tax refund claims, rights and claims against carriers and shippers, leases, claims under insurance policies, all rights to indemnification and all other intangible personal property and intellectual property of every kind and nature (collectively referred to hereinafter as "Intangibles"); All the capital stock, bonds, notes, partnership interests, member interests in limited liability companies, and other securities, if any, held of record or beneficially by the Grantor, including without limitation the capital stock of all subsidiaries of the Grantor, and the Grantor's interests in all securities brokerage accounts (collectively referred to hereinafter as "Investments"); All cash on hand and on deposit in banks, trust companies and similar institutions, and all property accounted for in the Grantor's financial statements as "cash equivalents" (collectively referred to hereinafter as "Cash"); All accessions to, substitutions for and all replacements, products and proceeds of the Receivables, Inventory, Equipment, Intangibles, Investments and Cash (collectively referred to hereinafter as "Collateral"), including without limitation proceeds of insurance policies insuring the Collateral; and Books and records relating to any of the Collateral (including without limitation, customer data, credit files, computer programs, printouts, and other computer materials and records of the Grantor pertaining to any of the

17. Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

18. Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction
☐ Filed in connection with a Public-Finance Transaction

Prepared by CT Lien Solutions, P.O. Box 29071
Glendale, CA 91209-9071  Tel (800) 331-3282

# FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| 9a. ORGANIZATION'S NAME | | |
|---|---|---|

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|

**10. MISCELLANEOUS**

27411705-NJ-0

**20385 STRATEGIC FUND**

File with: New Jersey      17877

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names**

| 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 11d. SEE INSTRUCTION | ADD'L INFO RE 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|
| | ORGANIZATION DEBTOR | | | ☐ NONE |

**12.** ☐ ADDITIONAL SECURED PARTY'S  or  ☐ ASSIGNOR S/P'S  NAME - insert only one name (12a or 12b)

| 12a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral or is filed as a ☐ fixture filing.

**14.** Description of real estate:

**16.** Additional collateral description:

foregoing).    NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN. THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCER IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEROF RECEIVED BY SUCH ENTITY.

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**17.** Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust  or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction
☐ Filed in connection with a Public-Finance Transaction

ACKNOWLEDGMENT COPY - NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/21/09)

Prepared by CT Lien Solutions, P.O. Box 29071
Glendale, CA 91209-9071  Tel (800) 331-3282

# Exhibit G

2012-Mar-26 08:30 AM lexxa inc 8564897849                                                    3/10



| | |
|---|---|
| | Contract# 108121 |
| | Sales Partner: Capital Solutions |
| | / John Aitkens |

## MERCHANT CASH ADVANCE AGREEMENT

Agreement dated __March__ __23__ __2012__ between Strategic Funding Source Inc. ("SFSI") and the merchant listed below ("the Merchant").
(Month)  (Day)  (Year)

### MERCHANT INFORMATION

Merchant's Legal Name: Lexxa, Inc

D/B/A: Bernard's Salon & Spa (Cherry Hill)                 State of Incorporation/organization: NJ

Type of entity: ( X ) Corporation ( ) Limited Liability Company ( ) Limited Partnership ( ) Limited Liability Partnership ( ) Sole Proprietor

Physical Address: 100 Spring Dale Rd         City: Cherry Hill      State: NJ      Zip: 08003

Mailing Address:                             City:                  State:        Zip:

Date business started (mm/yy): 01/90         Federal ID# Redacted

Monthly Total Sales _____    Monthly Card Sales _____    Monthly Cash Sales _____

### PURCHASE AND SALE OF FUTURE RECEIPTS

Merchant hereby sells, assigns and transfers to SFSI (making SFSI the absolute owner) in consideration of the purchase price specified below (the "Purchase Price"), all of Merchant's future accounts, contract rights and other rights to payment arising from or relating to the use by Merchant's customers of cash, credit cards, charge cards, debit cards, prepaid cards, mobile payments and other similar payment methods in the ordinary course of Merchant's business (the "Receipts") for the payment of Merchant's sale of goods or rendition of services until the purchased amount specified below (the "Purchased Amount") has been delivered by Merchant to SFSI, provided that the Purchase Price, the Specified Percentage (as defined below) and/or the Purchased Amount may be adjusted by SFSI and Merchant in writing if one or more card processing conditions are not satisfied.

The Purchased Amount shall be paid to SFSI by Merchant's irrevocably authorizing only one card processor acceptable to SFSI ("Processor") to remit to or for the benefit of SFSI the percentage specified below (the "Specified Percentage") of Merchant's settlement amounts due from each card issuer with respect to the Receipts, until such time as SFSI receives payment in full of the Purchased Amount. Furthermore Merchant will not enter into another cash advance agreement or any other type of factoring agreement during the term of this contract. Notwithstanding anything to the contrary in this Agreement or any other agreement between SFSI and Merchant, upon the occurrence of an Event of Default under Section 3 of the MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%.

Purchase Price: $80,000.00          Specified Percentage: 20 %          Receipts Purchased Amount: $103,920.00

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS", THE "MERCHANT SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM" EACH OF WHICH IS ATTACHED HERETO, ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS AGREEMENT.

MERCHANT #1
By Anthony Rossano Jr.     _____     (Signature)                    ➤ Sign Here

MERCHANT #2
By _____        _____
       (Print Name and Title)                (Signature)                              ➤ Sign Here

OWNER/GUARANTOR #1
By Anthony Rossano Jr.     _____
       (Print Name)                          (Signature)                              ➤ Sign Here

OWNER/GUARANTOR #2
By _____        _____
       (Print Name)                          (Signature)                              ➤ Sign Here

STRATEGIC FUNDING SOURCE, INC.
By _____        Associate Name _____
   (Strategic Funding Source, Inc. Officer)              (Signature)

Each person signing this Agreement on behalf of Merchant represents that he or she is authorized to sign this Agreement on behalf of Merchant, and each person signing this Agreement on behalf of Merchant and/or as Owner/Guarantor represents that the information provided herein and in all of SFSI's forms is true, accurate and complete in all respects. SFSI may produce a monthly statement reflecting the delivery of the Specified Percentage of Receipts from Merchant to SFSI via Processor.

ANY MISREPRESENTATION MADE BY MERCHANT OR ANY OWNER/GUARANTOR IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.

SFS-MA 02-10-12                          Page 1 of 7

MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS

**I. TERMS OF ENROLLMENT IN PROGRAM**

**1.1 Merchant Cash Advance Agreement.** These terms and conditions shall be incorporated in and made a part of the attached Merchant Cash Advance Agreement (such Merchant Cash Advance Agreement, as supplemented by these terms and conditions, this "Agreement").

**1.2 Merchant Processing Agreement.** Merchant shall execute an agreement (the "Merchant Processing Agreement") acceptable to SFSI, with a card processor acceptable to SFSI, to obtain card processing services. Merchant shall authorize Processor to deduct the amounts owed to SFSI for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from Processor card transactions and to pay such amounts to SFSI pursuant to SFSI's instructions to Processor. The authorization shall be irrevocable without the written consent of SFSI. Processor may rely upon the instructions of SFSI, without any independent verification, in making such deductions and payments, and Merchant waives any claims for damages it may have against Processor in connection with such acts unless such damages were due to Processor's failure to follow SFSI's instructions.

**1.3 Purchase Price Reduction.** SFSI may, in its sole discretion, reduce the Purchase Price if one or more card processing conditions are not satisfied.

**1.4 Bridge / Control Account.** Merchant may be required to open a new bank account into which 100% of the settlement amounts will be deposited and the Specified Percentage collected by SFSI (the "Bridge / Control Account"). Merchant appoints SFSI as "Acting Agent" over the Bridge / Control Account, and shall instruct Processor to designate the Bridge / Control Account as the new account for all of Merchant's customers' card transactions. Merchant assumes all responsibility for all fees, costs, charge-backs or suspicious items processed through the Bridge / Control Account (see "Miscellaneous Service Fees" paragraph 3.7). Merchant agrees to maintain a minimum balance in the Bridge / Control Account (the "Minimum Balance") equal to the per-month average of all fees charged to Merchant by Processor, averaged over a six-month period.

**1.5 Financial Condition.** Merchant and each Owner/Guarantor authorize SFSI, its agents and representatives, and any credit reporting agency engaged by SFSI, to investigate their creditworthiness, financial responsibility and history, and they agree to provide SFSI any financial statements, tax returns, references, or other credit or financial information as SFSI deems necessary prior to or after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of credit and financial information. Merchant and each Owner/Guarantor authorize SFSI to update their credit and financial profile from time to time in the future, as SFSI deems appropriate. An investigative or consumer report may be made or obtained in connection with this Agreement.

**1.6 Transactional History.** Merchant authorizes Processor and each of Merchant's banks to provide SFSI upon request with Merchant's card history or bank statements, as applicable.

**1.7 Indemnification.** Merchant and each Owner/Guarantor jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by SFSI for monies owed to SFSI from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by SFSI.

**1.8 No Liability.** In no event will Processor or SFSI be liable for any claims asserted by Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by Merchant and each Owner/Guarantor.

**1.9 Reliance on Terms.** Sections 1.2, 1.7, 1.8, 2.5, and 4.6 hereof are agreed to for the benefit of Merchant, SFSI and Processor, and notwithstanding the fact that Processor is not a party to this Agreement, Processor may rely upon their terms and raise them as a defense in any action.

**1.10 Sale of Receipts.** Merchant and SFSI intend that the transfer of the interest in the Receipts from Merchant to SFSI constitute a sale, and not a loan, for all purposes. Merchant agrees that the Purchase Price equals the fair market value of such interest. If, notwithstanding such intent, such transfer is not deemed to constitute a sale, Merchant hereby grants to SFSI a security interest in all right, title and interest of Merchant in and to the Receipts, which security interest shall secure the payment of the Purchased Amount and all other obligations of Merchant under this Agreement. In no event shall the aggregate of all amounts deemed interest hereunder charged or collected hereunder exceed the highest rate permissible at law. In the event that a court determines that SFSI has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and SFSI shall promptly refund to Merchant any interest received by SFSI in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that SFSI not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. Merchant hereby authorizes SFSI to file any financing statements deemed necessary by SFSI to perfect or maintain SFSI's interest in the Receipts.

**1.11 Power of Attorney.** Merchant irrevocably appoints SFSI and any assignee of SFSI as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to SFSI from Processor, or upon the occurrence of an Event of Default under Section 3.1 hereof, to settle all obligations due to SFSI from Merchant, under this Agreement, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral (as defined in the Merchant Security Agreement and Guaranty); (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoices, bill of lading, or assignment directing customers or account debtors to make payment directly to SFSI; and (v) to file any claims or take any action or institute any proceeding which SFSI may deem necessary for the collection of any unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount.

**1.12 Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner/Guarantor, in respect of himself or herself personally, authorizes SFSI to disclose to any third party information concerning Merchant's and each Owner's/Guarantor's credit standing (including credit bureau reports that SFSI obtains) and business conduct. Merchant and each Owner/Guarantor hereby waive to the maximum extent permitted by law any claim for damages against SFSI or any of its affiliates relating to any (i) investigation undertaken by or on behalf of SFSI as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**1.13 Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by SFSI, including this Agreement, the Merchant Security Agreement and Guaranty and any other documents executed in connection with such agreements or related to such agreements (collectively, "Confidential Information") are proprietary and confidential information of SFSI. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to not disclose Confidential Information to any person in accordance with the terms of this Section 1.13.

**1.14 Publicity.** Merchant and each Owner/Guarantor authorize SFSI to use their respective names in a listing of clients and in advertising and marketing materials.

**1.15 D/B/A's.** Merchant and each Owner/Guarantor hereby acknowledge and agree that SFSI may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between SFSI and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**1.16 Financial Information.** Merchant and each Owner/Guarantor shall provide to SFSI upon request copies of financial statements representing the financial condition of Merchant and/or such Owner/Guarantor.

**II. REPRESENTATIONS, WARRANTIES AND COVENANTS**

Merchant and each Owner/Guarantor each represents, warrants and covenants that as of the date of this Agreement and on each date during the term of this Agreement:

**2.1 Financial Condition and Financial Information.** Its financial statements, copies of which have been furnished to SFSI, and any financial statements furnished to SFSI hereafter, fairly represent the financial condition of Merchant and each Owner/Guarantor at such dates, and since those dates there has been no material adverse change, financial or otherwise, in such condition or in the operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise SFSI of any material adverse change in its financial condition, operation or ownership.

**2.2 Governmental Approvals.** Merchant is and will remain in compliance with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

**2.3 Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to execute this Agreement and to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**2.4 Insurance.** Merchant has and will maintain business-interruption insurance naming SFSI as loss payee and additional insured in such amounts and against such risks as are satisfactory to SFSI and shall provide SFSI proof of such insurance upon request.

**2.5 Merchant Processing Agreement and Arrangements.** Without SFSI's prior written consent, Merchant will not: (i) change the card processor through which the Receipts are settled from Processor to another card processor; (ii) permit any event to occur that could cause diversion of any of Merchant's card transactions from Processor to another processor; (iii) change its arrangements with Processor or amend the

Merchant Processing Agreement in any way that is adverse to SPSI; (iv) add card processing terminals, (v) use multiple card processing terminals; (vi) change the financial institution or bank account(s) (including, if applicable, the Bridge / Control Account); (vii) take any other action that could have any adverse effect upon Merchant's obligations under this Agreement or SPSI's interest in the Receipts; or (viii) take any action, fail to take any action, or offer any incentive—economic or otherwise—the result of which could be to discourage the use of cards that are settled through Processor, or to induce any customers to pay for Merchant's services with any means other than cards that are settled through Processor, or permit any event to occur that could have an adverse effect on the use, acceptance, or authorization of cards for the purchase of Merchant's services and products.

2.6 Change of Name or Location. Merchant will not conduct its businesses under any name other than as disclosed to Processor and SPSI or change any of its places of business.

2.7 Daily Batch Out. Merchant will batch out receipts with Processor on a daily basis.

2.8 Estoppel Certificate. Merchant will at any time, and from time to time, upon at least one (1) day's prior notice from SPSI to Merchant, execute, acknowledge and deliver to SPSI and/or to any other person, firm or corporation specified by SPSI, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates on which the Purchased Amount or any portion thereof has been paid.

2.9 No Bankruptcy. Neither Merchant nor any Owner/Guarantor has filed any petition for bankruptcy protection under Title 11 of the United States Code, no involuntary petition for bankruptcy has been brought or is pending against Merchant or any Owner/Guarantor, neither Merchant nor any Owner/Guarantor has admitted in writing its inability to pay its debts or made a general assignment for the benefit of creditors, and no other proceeding has been instituted by or against Merchant or any Owner/Guarantor seeking to adjudicate it insolvent or seeking reorganization, arrangement, adjustment or composition of it or its debts. Merchant does not anticipate filing any such bankruptcy petition and is not aware and has no reason to believe that any such bankruptcy petition or other proceeding will be filed or brought against it or any Owner/Guarantor.

2.10 Other Financing. Merchant shall not enter into any arrangement, agreement or commitment that relates to or involves Receipts, whether in the form of a purchase (such as a merchant cash advance) of, a loan against, or the sale or purchase of credits against, any Receipts, cash deposits or future card or mobile payment sales with any party other than SPSI without its written permission.

2.11 Unencumbered Receipts. Merchant has good and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with any party other than SPSI without its written permission.

2.12 Business Purpose. Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

2.13 Default Under Other Contracts. Merchant's execution of or performance under this Agreement will not cause or create any breach or default by Merchant under any contract with another person or entity.

2.14 Delivery of Confession of Judgment. Upon execution of this Agreement, Merchant shall, if requested by SPSI, deliver to SPSI an executed Confession of Judgment (the "Confession of Judgment"), in the form provided by SPSI, in favor of SPSI in the amount of the Purchased Amount.

2.15 Delivery of Assignment of Lease. Merchant and each Owner/Guarantor authorize SPSI to receive pertinent information regarding the commercial lease for the physical location(s) of Merchant's business (the "Premises") from any applicable leasing company and or agent. Merchant may be asked to deliver to SPSI an executed Assignment of Lease assigning all of Merchant's right, title and interest in and to the Premises and under the lease for the Premises to SPSI (the "Assignment of Lease").

2.16 Sale of Business. Merchant shall not sell, dispose, transfer or otherwise convey its business or assets without (i) the express prior written consent of SPSI, and (ii) the written agreement of any purchaser or transferee assuming all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to SPSI.

2.17 Bridge / Control Account. If Merchant is required to open a Bridge / Control Account, (i) Merchant will not, unless otherwise directed in writing by SPSI, take any action to cause the Specified Percentage of the settlement amounts to be settled or delivered to any account other than the Bridge / Control Account and (ii) Merchant will at all times maintain the Minimum Balance in the Bridge / Control Account.

2.18 Use of Proceeds. Merchant will conduct its business and use the Purchase Price in the ordinary course of its business, consistent with past practice.

2.19 Accuracy of Information. All information provided by Merchant and each Owner/Guarantor to SPSI herein, in the Merchant Security Agreement and Guaranty, and in all other documents executed in connection with such agreements or related to such agreements is true, accurate and complete in all respects.

## III. EVENTS OF DEFAULT AND REMEDIES

3.1 Events of Default. The occurrence of any of the following events shall constitute an "Event of Default" hereunder: (a) Merchant or any Owner/Guarantor violates any term, covenant or condition in this Agreement, the Merchant Security Agreement and Guaranty or any other agreement with SPSI; (b) any representation or warranty by Merchant or any Owner/Guarantor in this Agreement, the Merchant Security Agreement and Guaranty or any other agreement with SPSI shall prove to have been incorrect, incomplete, false or misleading in any material respect when made; (c) Merchant or any Owner/Guarantor admits in writing its inability to pay its debts, or makes a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against Merchant or any Owner/Guarantor seeking to adjudicate it bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts; (d) any Owner/Guarantor sends a notice of termination of the Merchant Security Agreement and Guaranty; (e) Merchant suspends, dissolves or terminates its business; (f) Merchant sells all or substantially all of its assets; (g) Merchant makes or sends notice of any intended bulk sale or transfer by Merchant; (h) Merchant performs any act that incumbers the cash flow of the business placing undue stress on the viability of the operations and reduces the value of the Collateral or the security interest granted in the Collateral under the Merchant Security Agreement and Guaranty; (i) any Owner/Guarantor performs any act that reduces the value of the Additional Collateral (as defined in the Merchant Security Agreement and Guaranty) or the security

interest granted in the Additional Collateral under the Merchant Security Agreement and Guaranty; or (j) Merchant or any Owner/Guarantor files any petition for bankruptcy under the United States code or an involuntary petition for bankruptcy has been brought or is pending against Merchant or any Owner/Guarantor, (k)Merchant or any Owner/Guarantor defaults under any of the terms, covenants and conditions of any other agreement with SPSI including those with affiliated / associated businesses.

3.2 Remedies. Upon the occurrence of an Event of Default that is not waived pursuant to Section 4.4 hereof, SPSI may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the performance of Merchant's and each Owner's/Guarantor's obligations hereunder, under the Merchant Security Agreement and Guaranty, or pursuant to any other legal or equitable right or remedy. Upon SPSI's notice to Merchant of any Event of Default, the entire Receipts Purchased Amount and unpaid fees not already paid to SPSI shall become immediately due and payable to SPSI. In addition, upon an Event of Default (i) SPSI may enforce the provisions of the Merchant Security Agreement and Guaranty against each Owner/Guarantor; (ii) SPSI may enforce its security interest in the Collateral and Additional Collateral; (iii) SPSI may debit Merchant's deposit accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise; (iv) SPSI may enter the Confession of Judgment as a judgment with the appropriate Clerk of Court and execute thereon; and (v) SPSI may exercise its rights under the Assignment of Lease. All rights, powers and remedies of SPSI in connection with this Agreement and the Merchant Security Agreement and Guaranty may be exercised at any time by SPSI after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

3.3 Costs. Merchant and each Owner/Guarantor shall pay to SPSI all costs reasonably incurred by SPSI in connection with (a) any Event of Default including without limitation any breach by Merchant or any Owner/Guarantor of the representations, warranties and covenants in this Agreement or the Merchant Security Agreement and Guaranty, and (b) the enforcement of SPSI's remedies set forth in Section 3.2 hereof, including but not limited to court costs and attorneys' fees.

3.4 Required Notifications. Merchant and each Owner/Guarantor shall give SPSI written notice within 24 hours of any filing by Merchant or any Owner/Guarantor under Title 11 of the United States Code or of the occurrence of any other event described in Section 3.1(e) hereof. Merchant shall give SPSI seven days' written notice prior to the closing of any sale of all or substantially all of Merchant's assets or stock. Merchant shall give SPSI seven days' written notice prior to the suspension, dissolution or termination its business.

3.5 Default Fee. Upon the Occurrence of any Event of Default, and written notice to Merchant thereof, Merchant shall pay to SPSI a default fee ("Default Fee") of $2,500. The Default Fee shall be payable on demand and stand in addition to any other fees or penalties outlined within this Agreement, the Merchant Security Agreement or Guaranty.

3.6 Processor Change Fee. Merchant shall pay a processor change fee (the "Processor Change Fee") to SPSI in the amount of $5,000.00 in the event that Merchant (i) uses multiple card processing terminals without the prior written consent of SPSI, (ii) changes its card processor without the prior written consent of SPSI or (iii) directs Processor to deliver settlement

amounts to any account other than the Bridge / Control Account (if Merchant is required to open a Bridge / Control Account). Such Processor Change Fee (i) shall be due and payable to SFSI on demand, (ii) is not exclusive of, and is cumulative with, any other fee or amount paid or payable to SFSI by Merchant pursuant to this Agreement or the Merchant Security Agreement and Guaranty, and (iii) shall not be construed as a waiver of any Event of Default hereunder or under the Merchant Security Agreement and Guaranty or as otherwise operating to reduce or limit SFSI's rights or remedies provided for hereunder, under the Merchant Security Agreement and Guaranty or at law or in equity.

**3.7 Miscellaneous Service Fees.** Merchant shall pay certain fees for services related to the origination and maintenance of accounts which may include but not be limited to: Merchant funding is done electronically to their designated bank account and charged a fee of $30.00 for a Fed Wire at $12.50 for an ACH. The fee for underwriting and origination is $295.00 paid from the funded amount. If Merchant is utilizing a Bridge / Control Account, there is an upfront fee of $395.00 for the bank fees and administrative costs of maintaining such account for each cash advance agreement with Merchant. Fund transfers from Bridge / Control Accounts to Merchant's operating bank account will be charged $7.50 per month via ACH. Merchant will be charged $35.00 for each change of its operating bank account once active with SFSI. Any administrative adjustments associated with changes to the Specified Percentage will incur a fee of $50.00 per occurance.

INITIALS: . . . . .

## IV. MISCELLANEOUS

**4.1 Modifications; Agreements.** No modification, amendment, or waiver of any provision of, or consent to any action under, this Agreement or the Merchant Security Agreement and Guaranty shall be effective unless the same is in writing and signed by SFSI.

**4.2 Assignment.** SFSI may assign its rights and/or obligations under this Agreement and/or the Merchant Security Agreement and Guaranty in whole or in part without prior notice to Merchant or any Owner/Guarantor, including, without limitation, its right to receive all or any portion of the Purchased Amount and its obligation to fund all or any portion of the Purchase Price. Merchant acknowledges that, if any such assignment is made, persons other than SFSI may have the right to exercise rights or remedies against Merchant pursuant to this Agreement. Merchant shall not have, and no Owner/Guarantor shall have, the right to assign its rights and/or obligations under this Agreement and/or the Merchant Security Agreement and Guaranty or any interest herein or therein without the prior written consent of SFSI, which consent may be withheld in SFSI's sole discretion.

**4.3 All** notices, requests, consent, demands and other communications hereunder and under the Merchant Security Agreement and Guaranty shall be delivered by ordinary mail, effective upon mailing, to the respective parties to this Agreement and the Merchant Security Agreement and Guaranty at the addresses set forth in this Agreement and shall become effective only upon receipt. The Parties hereto may also send such notices, requests, consent, demands and other communications via facsimile ("FAX") or electronic mail ("Email") at such FAX numbers and email addresses communicated by the parties hereto in writing.

**4.4 Waiver Remedies.** No failure on the part of SFSI to exercise, and no delay in exercising, any right under this Agreement or the Merchant Security Agreement and Guaranty shall operate as a waiver thereof, nor shall

any single or partial exercise of any right under this Agreement or the Merchant Security Agreement and Guaranty preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder and under the Merchant Security Agreement and Guaranty are cumulative and not exclusive of any remedies provided by law or equity.

**4.5 Solicitations.** Merchant and each Owner/Guarantor authorizes SFSI and its affiliates to communicate with, solicit and /or market to Merchant and each Owner/Guarantor via regular mail, telephone, email and facsimile in connection with the provision of goods or services by SFSI, its affiliates or any third party that SFSI shares, transfers, exchanges, discloses or provides information with and will hold SFSI, its affiliates and such third parties harmless against any and all claims pursuant to the federal CAN-SPAM ACT of 2003 (Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003), the Telephone Consumer Protection Act (TCPA), and any and all other state or federal laws relating to transmissions or solicitations by and any of the methods described above.

**4.6 Terminated Merchant File and Match File.** Merchant expressly acknowledges that a Terminated Merchant File ("TMF"), or any successor therein, is maintained by MasterCard or VISA containing the business name and names and identification of principals of merchants which have been terminated for one or more of the reasons specified in MasterCard or VISA operating regulations. Such reasons include, but are not limited to, fraud, counterfeit drafts, unauthorized transactions, excessive charge-backs and retrieval requests, money laundering, or where a high security risk exists. MERCHANT ACKNOWLEDGES THAT PROCESSOR AND SFSI ARE REQUIRED TO REPORT THE BUSINESS NAME OF MERCHANT AND THE NAMES AND IDENTIFICATION OF ITS PRINCIPALS TO THE TMF WHEN A MERCHANT IS TERMINATED FOR ONE OR MORE OF THE REASONS SPECIFIED IN MASTERCARD OR VISA OPERATING REGULATIONS. MERCHANT EXPRESSLY AGREES AND CONSENTS TO SUCH REPORTING BY PROCESSOR AND SFSI AND RELEASES EACH FROM ANY DAMAGES FOR DOING SO IN GOOD FAITH.

**4.7 Binding Effect; Governing Law, Venue and Jurisdiction.** This Agreement and the Merchant Security Agreement and Guaranty shall be binding upon and inure to the benefit of Merchant, each Owner/Guarantor, SFSI and their respective successors and assigns. This Agreement and the Merchant Security Agreement and Guaranty shall be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable conflicts of law principles. Any suit, action or proceeding arising hereunder or under the Merchant Security Agreement and Guaranty, or the interpretation, performance or breach hereof or thereof, shall, if SFSI so elects, be instituted in any court sitting in New York, New York, (the "Acceptable Forum"). Each of Merchant and each Owner/Guarantor agrees that any state or federal court sitting in the Acceptable Forum is convenient to it, hereby irrevocably and unconditionally submits to the personal jurisdiction of any such court and hereby waives any and all objections to jurisdiction or venue. Each of Merchant and each Owner/Guarantor agrees that a final judgment in any such suit, action or proceeding brought in any such court shall be conclusive and binding upon such party and may be enforced in any other courts to whose jurisdiction such party is or may be subject, by suit upon such judgment. Should such suit, action or proceeding be instituted in any other forum, Merchant and each Owner/Guarantor waive any right to oppose any motion or application made by SFSI to transfer such suit, action or proceeding to the Acceptable Forum.

**4.8 Survival of Representation, etc.** All representations, warranties and covenants herein and in the Merchant Security Agreement and Guaranty shall survive the execution and delivery of this Agreement and the Merchant Security Agreement and Guaranty and shall continue in full force until all obligations under this Agreement and the Merchant Security Agreement and Guaranty shall have been satisfied in full and this Agreement and the Merchant Security Agreement and Guaranty shall have terminated.

**4.9 Severability.** In case any of the provisions in this Agreement or the Merchant Security Agreement and Guaranty is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein or therein shall not in any way be affected or impaired.

**4.10 Entire Agreement.** Any provision hereof or of the Merchant Security Agreement and Guaranty prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof or thereof. This Agreement and the Merchant Security Agreement and Guaranty embody the entire agreement between Merchant, each Owner/Guarantor and SFSI and supersede all prior agreements and understandings relating to the subject matter hereof.

**4.11 JURY TRIAL WAIVER.** THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THIS AGREEMENT OR THE MERCHANT SECURITY AGREEMENT AND GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY OR THE ENFORCEMENT HEREOF OR THEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY, VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH ITS ATTORNEYS.

**4.12 CLASS ACTION WAIVER.** THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST ANY OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW. TO THE EXTENT ANY PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST ANOTHER PARTY, THE PARTIES HERETO AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOTWITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT OR THE MERCHANT SECURITY AGREEMENT AND GUARANTY); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

INITIALS: _Ad_

SFS-MA 02-10-12

Page 4 of 7

**4.13 Counterparts; Facsimile and PDF Acceptance.**

This Agreement and the Merchant Security Agreement and Guaranty may be executed in counterparts, each of which shall constitute an original, but all of which together shall constitute one instrument. Signatures on this Agreement and the Merchant Security Agreement and Guaranty sent by facsimile or PDF will be treated as original signatures for all purposes.

INITIALS: _____

## STRATEGIC FUNDING SOURCE, INC - MERCHANT SECURITY AGREEMENT AND GUARANTY

Merchant's Legal Name: Lexxa, Inc                     D/B/A: Bernard's Salon & Spa (Cherry Hill)

Physical Address: 100 Spring Dale Rd     City: Cherry Hill     State: NJ     Zip: 08003

Federal ID#: Redacted

### SECURITY AGREEMENT

**Security Interest.** To secure Merchant's payment and performance obligations to SFSI under the Merchant Cash Advance Agreement between Merchant and SFSI (the "Merchant Agreement"), Merchant hereby grants to SFSI a security interest in all personal property of Merchant, including all accounts, chattel paper, cash, deposit accounts, documents, equipment, general intangibles, instruments, inventory, or investment property, as those terms are defined in Article 9 of the Uniform Commercial Code of the State of New York as amended (the "UCC"), whether now or hereafter owned or acquired by Merchant and wherever located; and all proceeds of such property, as that term is defined in Article 9 of the UCC (collectively, the "Collateral").

**Cross-Collateral.** To secure Guarantor's payment and performance obligations to SFSI under this Merchant Security Agreement and Guaranty (this "Agreement"), each Guarantor hereby grants SFSI a security interest in _____ Bernard's of Marlton, LLC (d/b/a Bernard's Salon & Spa (Marlton)), b2 Salon, LLC (d/b/a b2 Salon (Egg Harbor)), b2 Salon, LLC (d/b/a b2 Salon (Haddonfield)), b2 Salon, LLC (d/b/a b2 Salon (South Broad)) (the "Additional Collateral"). Each Guarantor agrees and acknowledges that SFSI will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement.

Each of Merchant and each Guarantor agrees to execute any documents or take any action in connection with this Agreement as SFSI deems necessary to perfect or maintain SFSI's first priority security interest in the Collateral and Additional Collateral, including the execution of any control agreements. Each of Merchant and each Guarantor hereby authorizes SFSI to file any financing statements deemed necessary by SFSI to perfect or maintain SFSI's security interest, which financing statements may contain notification that Merchant and each Guarantor have granted a negative pledge to SFSI with respect to the Collateral and Additional Collateral, and that any subsequent lender or lienor may be tortiously interfering with SFSI's rights. Merchant and each Guarantor shall be jointly and severally liable for and shall pay to SFSI upon demand all costs and expenses, including but not limited to attorneys' fees, which may be incurred by SFSI in protecting, preserving and enforcing SFSI's security interest and rights.

**Negative Pledge.** Each of Merchant and each Guarantor agrees not to create, incur, assume, or permit to exist, directly or indirectly, any additional cash advances, loans, lien or other encumbrance on or with respect to any of the Collateral or Additional Collateral, as applicable without written permission of SFSI.

**Consent to Enter Premises and Assign Lease.** SFSI shall have the right to cure Merchant's default in the payment of rent for the Premises on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, SFSI may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that SFSI may enter into an agreement with Merchant's landlord giving SFSI the right: (a) to enter the Premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and (b) to assign Merchant's lease to another qualified merchant capable of operating a business comparable to Merchant's at the Premises.

**Remedies.** Upon any Event of Default, SFSI may pursue any remedy available at law (including those available under the provisions of the UCC) or in equity to collect, enforce, or satisfy any obligations then owing to SFSI, whether by acceleration or otherwise.

### GUARANTY

**Performance Guaranty.** Each undersigned Guarantor ("Guarantor") hereby unconditionally guarantees to SFSI the payment and performance by Merchant of all of its obligations under this Agreement and the Merchant Agreement, as each agreement may be renewed, amended, extended or otherwise modified from time to time (the "Guaranteed Obligations"). Guarantor shall be liable for and SFSI may charge and collect all costs and expenses, including but not limited to attorneys' fees, which may be incurred by SFSI in connection with the collection of any or all of the Guaranteed Obligations from Guarantor or the enforcement of this Agreement.

**Guarantor Waivers.** In the event that Merchant fails to make any payment when due or otherwise perform under the Merchant Agreement, SFSI may enforce its rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral SFSI may hold pursuant to this Agreement or any other guaranty.

SFSI does not have to notify Guarantor of any of the following events and Guarantor will not be released from any of its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay timely any amount owed under the Merchant Agreement; (ii) any material or adverse change in Merchant's financial condition or business operations; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations, including without limitation the Collateral or Additional Collateral, or any other guarantee of the Guaranteed Obligations; (iv) SFSI's acceptance of this Agreement; or (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to SFSI. In addition, SFSI may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to SFSI; (ii) release Merchant from its obligations to SFSI; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations, including without limitation the Collateral or Additional Collateral, in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Purchased Amount and Merchant's other obligations to SFSI under the Merchant Agreement and this Agreement are paid and performed in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that SFSI must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount. Guarantor agrees that its obligations under this Agreement shall be irrevocable and shall be unconditional irrespective of any circumstance that might otherwise operate as a legal or equitable discharge of a guarantor or a defense of a guarantor.

**Guarantor Acknowledgement.** Guarantor acknowledges that: (i) he/she understands the seriousness of the provisions of this Agreement and that any misrepresentation may constitute fraud; (ii) he/she has had a full opportunity to consult with counsel of his/her choice; and (iii) he/she has consulted with counsel of his/her choice or has decided not to avail himself/herself of that opportunity.

**Joint and Several Liability.** The obligations hereunder of each Guarantor are joint and several.

INITIAL: _____

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT CASH ADVANCE AGREEMENT", INCLUDING THE "MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS AGREEMENT. CAPITALIZED TERMS NOT DEFINED IN THIS AGREEMENT SHALL HAVE THE MEANINGS SET FORTH IN THE MERCHANT CASH ADVANCE AGREEMENT, INCLUDING THE MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS.

MERCHANT #1
By Anthony Rossano Jr.
          (Print Name and Title)
SS# Redacted

          (Signature)
Drivers License Number: Redacted

Sign Here

MERCHANT #2
By _____
          (Print Name and Title)
SS#

          (Signature)
Drivers License Number:

Sign Here

OWNER/GUARANTOR #1
By Anthony Rossano Jr.
          (Print Name and Title)
SS# Redacted

          (Signature)
Drivers License Number: Redacted

Sign Here

OWNER/GUARANTOR #2
By _____
          (Print Name and Title)
SS#

          (Signature)
Drivers License Number:

Sign Here

SFS-MA 02-10-12                    Page 7 of 7

Exhibit H

## UCC FINANCING STATEMENT
### FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Phone:(800) 331-3282 Fax: (818) 662-4141

**B. SEND ACKNOWLEDGEMENT TO: (Name and Address)**    20385 STRATEGIC FUND

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

24607976

NJNJ

25 ... 00

2571909-3

DEC 30 2010

2571909-3

**1. DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| **1a. ORGANIZATION'S NAME** LEXXA, INC. | | | | |

| **1b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|
| | | | |

| **1c. MAILING ADDRESS** 100 Spring Dale Rd | **CITY** Cherry Hill | **STATE** NJ | **POSTAL CODE** 08003 | **COUNTRY** USA |
|---|---|---|---|---|

| **1d. SEE INSTRUCTIONS** | **ADD'L INFO RE ORGANIZATION DEBTOR** | **1e. TYPE OF ORGANIZATION** CORPORATION | **1f. JURISDICTION OF ORGANIZATION** NJ | **1g. ORGANIZATIONAL ID #, if any** 0100485981 | ☐ NONE |
|---|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| **2a. ORGANIZATION'S NAME** Bernard's Salon & Spa | | | | |

| **2b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|
| | | | |

| **2c. MAILING ADDRESS** 100 Spring Dale Rd | **CITY** Cherry Hill | **STATE** NJ | **POSTAL CODE** 08003 | **COUNTRY** USA |
|---|---|---|---|---|

| **2d. SEE INSTRUCTIONS** | **ADD'L INFO RE ORGANIZATION DEBTOR** | **2e. TYPE OF ORGANIZATION** DBA | **2f. JURISDICTION OF ORGANIZATION** NJ | **2g. ORGANIZATIONAL ID #, if any** | ☒ NONE |
|---|---|---|---|---|---|

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)** - Insert only one secured party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| **3a. ORGANIZATION'S NAME** Strategic Funding Source, Inc. | | | | |

| **3b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|
| | | | |

| **3c. MAILING ADDRESS** 1501 Broadway, Suite 360 | **CITY** New York | **STATE** NY | **POSTAL CODE** 10036 | **COUNTRY** USA |
|---|---|---|---|---|

**4. This FINANCING STATEMENT covers the following collateral:**

Accounts, accounts receivable, contracts, real property leases, notes, bills, acceptances, chooses in action, chattel paper, instruments, documents and other forms of obligations at any time owing to the Grantor arising out of goods sold or leased or for services rendered by Grantor, the proceeds thereof and all of Grantor's rights with respect to any goods represented thereby, whether or not delivered, goods returned by customers and all rights as an unpaid vendor or lienor, including rights of stoppage in transit and of recovering possession by proceedings including replevin and reclamation, together with all customer lists, books and records, ledger and account cards, computer tapes, software, disks, printouts and records, whether now in existence or hereafter created, relating thereto (collectively referred to hereinafter as "Receivables"); Inventory, including without limitation, all goods manufactured or acquired for sale or lease, and any piece goods, raw materials, work in process and finished merchandise, findings or component materials, and all supplies, goods, incidentals, office supplies, packaging materials and any and all items used or consumed in the operation of the business of Grantor or which may contribute to the finished product or to the sale, promotion and shipment thereof, in which Grantor now or at any time hereafter may have an interest, whether or not the same is in transit or in the constructive, actual or exclusive occupancy or possession of Grantor or is held by Grantor or by others for Grantor's account (collectively referred to hereinafter as "Inventory"); Goods, including without limitation, all machinery, equipment, parts, supplies, apparatus, appliances, tools, fittings, furniture, furnishings, fixtures and articles of tangible personal property of every description now or hereafter owned by the Grantor or in which Grantor may have or may hereafter acquire any interest, at any location (collectively referred to hereinafter as "Equipment"); General intangibles in which the Grantor now has or hereafter acquires any rights, including but not limited to, causes of action, corporate or business records, inventions, designs, patents, patent applications, trademarks, trademark registrations and applications therefor, goodwill, trade names, trade secrets, trade processes, copyrights, copyright registrations and applications therefor, licenses, permits, franchises, customer lists, computer Continued on addendum.

| **5. ALTERNATIVE DESIGNATION [if applicable]** | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| **6.** This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS   Attach Addendum [if applicable] | **7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional]** | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

**8. OPTIONAL FILER REFERENCE DATA**
24607976                                                13764

ACKNOWLEDGMENT COPY - NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Prepared by CT Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

# FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| 9a. ORGANIZATION'S NAME | | |
|---|---|---|

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|

**10. MISCELLANEOUS**

24607976-NJ-0

20385 STRATEGIC FUND

File with: New Jersey    13764

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names**

| 11a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 11d. SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|

**12.** ☐ ADDITIONAL SECURED PARTY'S  or  ☐ ASSIGNOR S/P's  NAME - insert only one name (12a or 12b)

| 12a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral or is filed as a ☐ fixture filing.

**14.** Description of real estate:

**16.** Additional collateral description:

foregoing).

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**17.** Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction
☐ Filed in connection with a Public-Finance Transaction

ACKNOWLEDGMENT COPY - NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/21/09)

Prepared by CT Lien Solutions, P.O. Box 29071
Glendale, CA 91209-9071 Tel (800) 331-3282

# FINANCING STATEMENT ADDENDUM
**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| | 9a. ORGANIZATION'S NAME |
|---|---|

OR

| | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|---|

**10. MISCELLANEOUS**

24607976-NJ-0

20385 STRATEGIC FUND

File with:  New Jersey      13764

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one name (11a or 11b) - do not abbreviate or combine names**

| | 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|

OR

| | 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| 11c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

| 11d. SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|

**12.** ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P's NAME - insert only one name (12a or 12b)

| | 12a. ORGANIZATION'S NAME |
|---|---|

OR

| | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| 12c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral or is filed as a ☐ fixture filing.

**14.** Description of real estate:

**15.** Name and address of a RECORD OWNER of above-described real estate
(if Debtor does not have a record interest):

**16. Additional collateral description:**

programs, all claims under guaranties, tax refund claims, rights and claims against carriers and shippers, leases, claims under insurance policies, all rights to indemnification and all other intangible personal property and intellectual property of every kind and nature (collectively referred to hereinafter as "Intangibles"); All the capital stock, bonds, notes, partnership interests, member interests in limited liability companies, and other securities, if any, held of record or beneficially by the Grantor, including without limitation the capital stock of all subsidiaries of the Grantor, and the Grantor's interests in all securities brokerage accounts (collectively referred to hereinafter as "Investments"); All cash on hand and on deposit in banks, trust companies and similar institutions, and all property accounted for in the Grantor's financial statements as "cash equivalents" (collectively referred to hereinafter as "Cash"); All accessions to, substitutions for and all replacements, products and proceeds of the Receivables, Inventory, Equipment, Intangibles, Investments and Cash (collectively referred to hereinafter as "Collateral"), including without limitation proceeds of insurance policies insuring the Collateral; and Books and records relating to any of the Collateral (including without limitation, customer data, credit files, computer programs, printouts, and other computer materials and records of the Grantor pertaining to any of the

**17.** Check only if applicable and check only one box.

Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction
☐ Filed in connection with a Public-Finance Transaction

ACKNOWLEDGMENT COPY - NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/21/09)

Prepared by CT Lien Solutions, P.O. Box 29071
Glendale, CA 91209-9071 Tel (800) 331-3282

Exhibit I

# STRATEGIC FUNDING

| |
|---|
| Contract# 57941 |
| Sales Partner: Capital Solutions |
| / John Aitkens |

## MERCHANT CASH ADVANCE AGREEMENT

Agreement dated    September   20    2011    between Strategic Funding Source Inc. ("SFSI") and the merchant listed below ("the **Merchant**").
　　　　　　　　　(Month)　　(Day)　　(Year)

### MERCHANT INFORMATION

Merchant's Legal Name: **Bernard's of Marlton LLC**

D/B/A: Bernard's Salon & Spa (Marlton)                             State of Incorporation/organization:

Type of entity: ( ) Corporation ( X ) Limited Liability Company ( ) Limited Partnership ( ) Limited Liability Partnership ( ) Sole Proprietor

Physical Address: 795 East Route 70          City: Marlton          State: NJ          Zip: 08053

Mailing Address:                             City:               State:            Zip:

Date business started: 01/06          Federal ID# *Redacted*

Monthly Total Sales____          Monthly Card Sales____          Monthly Cash Sales____

### PURCHASE AND SALE OF FUTURE RECEIPTS

Merchant hereby sells, assigns and transfers to SFSI (making SFSI the absolute owner) in consideration of the purchase price specified below (the "Purchase Price"), all of Merchant's future accounts, contract rights and other rights to payment arising from or relating to the use by Merchant's customers of credit cards, charge cards, debit cards, prepaid cards and other similar payment cards in the ordinary course of Merchant's business (the "Receipts") for the payment of Merchant's sale of goods or rendition of services until the purchased amount specified below (the "Purchased Amount") has been delivered by Merchant to SFSI, provided that the Purchase Price, the Specified Percentage (as defined below) and/or the Purchased Amount may be adjusted by SFSI and Merchant in writing if one or more conditions are not satisfied.

The Purchased Amount shall be paid to SFSI by Merchant's irrevocably authorizing only one card processor acceptable to SFSI ("Processor") to remit to or for the benefit of SFSI the percentage specified below (the "Specified Percentage") of Merchant's settlement amounts due from each card issuer with respect to the Receipts, until such time as SFSI receives payment in full of the Purchased Amount. Furthermore Merchant will not enter into another cash advance agreement or any other type of factoring agreement during the term of this contract. Notwithstanding anything to the contrary in this Agreement or any other agreement between SFSI and Merchant, upon the occurrence of an Event of Default under Section 3 of the MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%.

Purchase Price: $25,000.00          Specified Percentage: 20 %          Receipts Purchased Amount: $32,475.00

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS", THE "MERCHANT SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM" EACH OF WHICH IS ATTACHED HERETO, ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS AGREEMENT.

MERCHANT #1
By _____          _____          >> Sign Here
(Print Name and Title) Anthony Rossano Jr.          (Signature)

MERCHANT #2
By _____          _____          >> Sign Here
(Print Name and Title)          (Signature)

OWNER/GUARANTOR #1
By Anthony Rossano Jr.          _____          >> Sign Here
(Print Name)          (Signature)

OWNER/GUARANTOR #2
By _____          _____          >> Sign Here
(Print Name)          (Signature)

STRATEGIC FUNDING SOURCE, INC.
By _____          Associate Name _____
(Strategic Funding Source, Inc. Officer)          (Signature)

Each person signing this Agreement on behalf of Merchant represents that he or she is authorized to sign this Agreement on behalf of Merchant, and each person signing this Agreement on behalf of Merchant and/or as Owner/Guarantor represents that the information provided herein and in all of SFSI's forms is true, accurate and complete in all respects. SFSI may produce a monthly statement reflecting the delivery of the Specified Percentage of Receipts from Merchant to SFSI via Processor.

ANY MISREPRESENTATION MADE BY MERCHANT OR ANY OWNER/GUARANTOR IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.

Page 1 of 7

## MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS

**I. TERMS OF ENROLLMENT IN PROGRAM**

**1.1 Merchant Cash Advance Agreement.** These terms and conditions shall be incorporated in and made a part of the attached Merchant Cash Advance Agreement (such Merchant Cash Advance Agreement, as supplemented by these terms and conditions, this "Agreement").

**1.2 Merchant Processing Agreement.** Merchant shall execute an agreement (the "Merchant Processing Agreement") acceptable to SFSI, with a card processor acceptable to SFSI, to obtain card processing services. Merchant shall authorize Processor to deduct the amounts owed to SFSI for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from Processor card transactions and to pay such amounts to SFSI pursuant to SFSI's instructions to Processor. The authorization shall be irrevocable without the written consent of SFSI. Processor may rely upon the instructions of SFSI, without any independent verification, in making such deductions and payments, and Merchant waives any claims for damages it may have against Processor in connection with such acts unless such damages were due to Processor's failure to follow SFSI's instructions.

**1.3 Purchase Price Reduction.** SFSI may, in its sole discretion, reduce the Purchase Price if one or more card processing conditions are not satisfied.

**1.4 Bridge / Control Account.** Merchant may be required to open a new bank account into which the Specified Percentage of the settlement amounts will be deposited (the "Bridge / Control Account") Merchant appoints SFSI as "Acting Agent" over the Bridge / Control Account, and shall instruct Processor to designate the Bridge / Control Account as the deposit account for all of Merchant's customers' card transactions. Merchant assumes all responsibility for all fees, costs, charge-backs or suspicious Items processed through the Bridge / Control Account (see "Miscellaneous Service Fees" paragraph 3.7). Merchant agrees to maintain a minimum balance in the Bridge / Control Account (the "Minimum Balance") equal to the per-month average of all fees charged to Merchant by Processor, averaged over a six-month period.

**1.5 Financial Condition.** Merchant and each Owner/Guarantor authorize SFSI, its agents and representatives, and any credit reporting agency engaged by SFSI, to investigate their creditworthiness, financial responsibility and history, and they agree to provide SFSI any financial statements, tax returns, references, or other credit or financial information as SFSI deems necessary prior to or after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of credit and financial information. Merchant and each Owner/Guarantor authorize SFSI to update their credit and financial profile from time to time in the future, as SFSI deems appropriate. An investigative or consumer report may be made or obtained in connection with this Agreement.

**1.6 Transactional History.** Merchant authorizes Processor and each of Merchant's banks to provide SFSI upon request with Merchant's card history or bank statements, as applicable.

**1.7 Indemnification.** Merchant and each Owner/Guarantor jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by SFSI for monies owed to SFSI from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by SFSI.

**1.8 No Liability.** In no event will Processor or SFSI be liable for any claims asserted by Merchant under

any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by Merchant and each Owner/Guarantor.

**1.9 Reliance on Terms. Sections** 1.2, 1.7, 1.8, 2.5, and 4.6 hereof are agreed to for the benefit of Merchant, SFSI and Processor, and notwithstanding the fact that Processor is not a party to this Agreement, Processor may rely upon these terms and raise them as a defense in any action.

**1.10 Sale of Receipts.** Merchant and SFSI intend that the transfer of the interest in the Receipts from Merchant to SFSI constitute a sale, and not a loan, for all purposes. Merchant agrees that the Purchase Price equals the fair market value of such interest. If, notwithstanding such intent, such transfer is not deemed to constitute a sale, Merchant hereby grants to SFSI a security interest in all right, title and interest of Merchant in and to the Receipts, which security interest shall secure the payment of the Purchased Amount and all other obligations of Merchant under this Agreement. In no event shall the aggregate of all amounts deemed interest hereunder and charged or collected hereunder exceed the highest rate permissible at law. In the event that a court determines that SFSI has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and SFSI shall promptly refund to Merchant any interest received by SFSI in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that SFSI not receive or contract to receive, directly or indirectly any interest in excess of that lawful rate in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. Merchant hereby authorizes SFSI to file any financing statements deemed necessary by SFSI to perfect or maintain SFSI's interest in the Receipts.

**1.11 Power of Attorney.** Merchant irrevocably appoints SFSI and any assignee of SFSI as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to SFSI from Processor, or upon the occurrence of an Event of Default under Section 3.1 hereof, to settle all obligations due to SFSI from Merchant, under this Agreement, including, without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral (as defined in the Merchant Security Agreement and Guaranty); (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to SFSI; and (v) to file any claims or take any action or institute any proceeding which SFSI may deem necessary for the collection of any unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount.

**1.12 Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner/Guarantor, in respect of himself or herself personally, authorizes SFSI to disclose to any third party information concerning Merchant's and each Owner's/Guarantor's credit standing (including such bureau reports that SFSI obtains) and business conduct. Merchant and each Owner/Guarantor hereby waive to the maximum extent permitted by law any claim for damages against SFSI or any of its affiliates relating to any (i) investigation undertaken by or on behalf of SFSI as permitted by this Agreement or (ii)

disclosure of information as permitted by this Agreement.

**1.13 Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services delivered by SFSI, including this Agreement, the Merchant Security Agreement and Guaranty and any other documents executed in connection with such agreements or related to such agreements (collectively, "Confidential Information") are proprietary and confidential information of SFSI. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this Section 1.13, provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to not disclose Confidential Information to any person in accordance with the terms of this Section 1.13.

**1.14 Publicity.** Merchant and each Owner/Guarantor authorize SFSI to use their respective names in a listing of clients and in advertising and marketing materials.

**1.15 D/B/A's.** Merchant and each Owner/Guarantor hereby acknowledge and agree that SFSI may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between SFSI and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**1.16 Financial Information.** Merchant and each Owner/Guarantor shall provide to SFSI upon request copies of financial statements representing the financial condition of Merchant and/or such Owner/Guarantor.

**II. REPRESENTATIONS, WARRANTIES AND COVENANTS**

Merchant and each Owner/Guarantor each represents, warrants and covenants that as of the date of this Agreement and on each date during the term of this Agreement:

**2.1 Financial Condition and Financial Information.** Its financial statements, copies of which have been furnished to SFSI, and any financial statements furnished to SFSI hereafter, fairly represent the financial condition of Merchant and each Owner/Guarantor at such dates, and since those dates there has been no material adverse change, financial or otherwise, in such condition or in the operation or ownership of Merchant. Merchant has a continuing affirmative obligation to advise SFSI of any material adverse change in its financial condition, operation or ownership.

**2.2 Governmental Approvals.** Merchant is and will remain in compliance with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

**2.3 Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to execute this Agreement and to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**2.4 Insurance.** Merchant has and will maintain business-interruption insurance naming SFSI as loss payee and additional insured in such amounts and against such risks as are satisfactory to SFSI and shall provide SFSI proof of such insurance upon request.

**2.5 Merchant Processing Agreement and Arrangements.** Without SFSI's prior written consent, Merchant will not: (i) change the card processor through which the Receipts are settled from Processor to another card processor; (ii) permit any event to occur that could cause diversion of any of Merchant's card transactions from Processor to another processor; (iii) change its arrangements with Processor or amend the

Merchant Processing Agreement in any way that is adverse to SFSI; (iv) add card processing terminals; (v) use multiple card processing terminals; (vi) change its financial institution or bank account(s) (including, if applicable, the Bridge / Control Account); (vii) take any other action that could have any adverse effect upon Merchant's obligations under this Agreement or SFSI's interest in the Receipts; or (viii) take any action, fail to take any action, or offer any incentive—economic or otherwise—the result of which could be to discourage the use of cards that are settled through Processor, or to induce any customers to pay for Merchant's services with any means other than cards that are settled through Processor; or permit any event to occur that could have an adverse effect on the use, acceptance, or authorization of cards for the purchase of Merchant's services and products.

**2.6 Change of Name or Location.** Merchant will not conduct its businesses under any name other than as disclosed in Processor and SFSI or change any of its places of business.

**2.7 Daily Batch Out.** Merchant will batch out receipts with Processor on a daily basis.

**2.8 Estoppel Certificate.** Merchant will at any time, and from time to time, upon at least one (1) day's prior notice from SFSI to Merchant, execute, acknowledge and deliver to SFSI and/or to any other person, firm or corporation specified by SFSI, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates on which the Purchased Amount or any portion thereof has been paid.

**2.9 No Bankruptcy.** Neither Merchant nor any Owner/Guarantor has filed any petition for bankruptcy protection under Title 11 of the United States Code, no involuntary petition for bankruptcy has been brought or is pending against Merchant or any Owner/Guarantor, neither Merchant nor any Owner/Guarantor has admitted in writing its inability to pay its debts or made a general assignment for the benefit of creditors, and no other proceeding has been instituted by or against Merchant or any Owner/Guarantor seeking to adjudicate it insolvent or seeking reorganization, arrangement, adjustment or composition of it or its debts. Merchant does not anticipate filing any such bankruptcy petition and is not aware and has no reason to believe that any such bankruptcy petition or other proceeding will be filed or brought against it or any Owner/Guarantor.

**2.10 Working Capital Funding.** Merchant shall not enter into any arrangement, agreement or commitment that relates to or involves Receipts, whether in the form of a purchase (such as a merchant cash advance) of, a loan against, or the sale or purchase of credits against, Receipts or future card sales with any party other than SFSI.

**2.11 Unencumbered Receipts.** Merchant has good and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of, SFSI.

**2.12 Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

**2.13 Default Under Other Contracts.** Merchant's execution of or performance under this Agreement will not cause or create any breach or default by Merchant under any contract with another person or entity.

**2.14 Delivery of Confession of Judgment.** Upon execution of this Agreement, Merchant shall, if requested by SFSI, deliver to SFSI an executed Confession of Judgment (the "Confession of Judgment"), in the form provided by SFSI, in favor of SFSI in the amount of the Purchased Amount.

**2.15 Delivery of Assignment of Lease.** Merchant and each Owner/Guarantor authorize SFSI to receive pertinent information regarding the commercial lease for the physical location(s) of Merchant's business (the "Premises") from any applicable leasing company and or agent. Merchant may be asked to deliver to SFSI an executed Assignment of Lease assigning all of Merchant's right, title and interest in and to the Premises and under the lease for the Premises to SFSI (the "Assignment of Lease").

**2.16 Sale of Business.** Merchant shall not sell, dispose, transfer or otherwise convey its business or assets without (i) the express prior written consent of SFSI, and (ii) the written agreement of any purchaser or transferee assuming all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to SFSI.

**2.17 Bridge / Control Account.** If Merchant is required to open a Bridge / Control Account, (i) Merchant will not, unless otherwise directed in writing by SFSI, take any action to cause the Specified Percentage of the settlement amounts to be settled or delivered to any account other than the Bridge / Control Account and (ii) Merchant will at all times maintain the Minimum Balance in the Bridge / Control Account.

**2.18 Use of Proceeds.** Merchant will conduct its business and use the Purchase Price in the ordinary course of its business, consistent with past practice.

**2.19 Accuracy of Information.** All information provided by Merchant and each Owner/Guarantor to SFSI herein, in the Merchant Security Agreement and Guaranty, and in all other documents executed in connection with such agreements or related to such agreements is true, accurate and complete in all respects.

## III. EVENTS OF DEFAULT AND REMEDIES

**3.1 Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder: (a) Merchant or any Owner/Guarantor violates any term, covenant or condition in this Agreement, the Merchant Security Agreement and Guaranty or any other agreement with SFSI; (b) any representation or warranty by Merchant or any Owner/Guarantor in this Agreement, the Merchant Security Agreement and Guaranty or any other agreement with SFSI shall prove to have been incorrect, incomplete, false or misleading in any material respect when made; (c) Merchant or any Owner/Guarantor admits in writing its inability to pay its debts, or makes a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against Merchant or any Owner/Guarantor seeking to adjudicate it bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts; (d) any Owner/Guarantor sends a notice of termination of the Merchant Security Agreement and Guaranty; (e) Merchant suspends, dissolves or terminates its business; (f) Merchant sells all or substantially all of its assets; (g) Merchant enters into any other factoring agreement; (h) Merchant performs any act that reduces the value of the Collateral or the security interest granted in the Collateral under the Merchant Security Agreement and Guaranty; (i) any Owner/Guarantor performs any act that reduces the value of the Additional Collateral (as defined in the Merchant Security Agreement and Guaranty) or the security interest granted in the Additional Collateral under the Merchant Security Agreement and Guaranty; or (j) Merchant or any Owner/Guarantor defaults under any of the terms,

covenants and conditions of any other agreement with SFSI.

**3.2 Remedies.** Upon the occurrence of an Event of Default that is not waived pursuant to Section 4.4 hereof, SFSI may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the performance of Merchant's and each Owner's/Guarantor's obligations hereunder, under the Merchant Security Agreement and Guaranty, or pursuant to any other legal or equitable right or remedy. Upon SFSI's notice to Merchant of any Event of Default, the entire Purchased Amount, not already paid to SFSI shall become immediately due and payable to SFSI. In addition, upon an Event of Default (i) SFSI may enforce the provisions of the Merchant Security Agreement and Guaranty against each Owner/Guarantor; (ii) SFSI may enforce its security interest in the Collateral and Additional Collateral; (iii) SFSI may debit Merchant's deposit accounts wherever situated by means of ACH credit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise; (iv) SFSI may enter the Confession of Judgment as a judgment with the appropriate Clerk of Court and execute thereon; and (v) SFSI may exercise its rights under the Assignment of Lease. All rights, powers and remedies of SFSI in connection with this Agreement and the Merchant Security Agreement and Guaranty may be exercised at any time by SFSI after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.3 Costs.** Merchant and each Owner/Guarantor shall pay to SFSI all costs reasonably incurred by SFSI in connection with (a) any Event of Default including without limitation any breach by Merchant or any Owner/Guarantor of the representations, warranties and covenants in this Agreement or the Merchant Security Agreement and Guaranty, and (b) the enforcement of SFSI's remedies set forth in Section 3.2 hereof, including but not limited to court costs and attorneys' fees.

**3.4 Required Notifications.** Merchant and each Owner/Guarantor shall give SFSI written notice within 24 hours of any filing by Merchant or any Owner/Guarantor under Title 11 of the United States Code or of the occurrence of any other event described in Section 3.1(e) hereof. Merchant shall give SFSI seven days' written notice prior to the closing of any sale of all or substantially all of Merchant's assets or stock. Merchant shall give SFSI seven days' written notice prior to the suspension, dissolution or termination its business.

**3.5 Default Waiver Fee.** Upon Merchant's request, SFSI may elect in its sole discretion to waive the occurrence of an Event of Default under this Agreement or the Merchant Security Agreement and Guaranty, provided that Merchant shall pay a default waiver fee (the "Default Waiver Fee") for each such waiver in the amount of $2,500.00 to SFSI, which amount shall be due and payable to SFSI on demand. Such Default Waiver Fee shall be payable for each Event of Default occurring under this Agreement or the Merchant Security Agreement and Guaranty and waived pursuant to this Section 3.5, and no such waiver of an Event of Default shall in any way be construed as a waiver by SFSI of any other occurrence of an Event of Default, or as otherwise limiting SFSI's rights or remedies provided for hereunder, under the Merchant Security Agreement and Guaranty, or by law or equity.

**3.6 Processor Change Fee.** Merchant shall pay a processor change fee (the "Processor Change Fee") to SFSI in the amount of $5,000.00 in the event that Merchant, (i) uses multiple card processing terminals without the prior written consent of SFSI, (ii) changes

its card processor without the prior written consent of SFSI or (iii) directs Processor to deliver settlement amounts to any account other than the Bridge / Control Account (if Merchant is required to open a Bridge / Control Account). Such Processor Change Fee (i) shall be one and payable to SFSI on demand, (ii) is not exclusive of, and is cumulative with, any other fee or amount paid or payable to SFSI by Merchant pursuant to this Agreement or the Merchant Security Agreement and Guaranty, and (iii) shall not be construed as a waiver of any Event of Default hereunder or under the Merchant Security Agreement and Guaranty or as otherwise operating to reduce or limit SFSI's rights or remedies provided for hereunder, under the Merchant Security Agreement and Guaranty or at law or in equity.

3.7 Miscellaneous Service Fees. Merchant shall pay certain fees for services related to the origination and maintenance of accounts. Merchant shall receive its funding electronically to its designated bank account and will be charged $30.00 for a Fed Wire or $12.50 for a bank ACH. Current charges for the underwriting and origination of this Agreement is $295.00 paid from the funded amount. If Merchant is utilizing a Bridge / Control Account, there is a one time, upfront fee of $395.00 for the administrative costs of maintaining such account for each cash advance agreement with Merchant. Fund transfers from Bridge / Control Accounts in Merchant's operating bank account will be charged $7.50 per month via ACH. Merchant will be charged $35.00 for every additional change of its operating bank account once such account is active with SFSI. Additional copies of prior monthly statements will incur a fee of $10.00 each.

## IV. MISCELLANEOUS

4.1 Modifications; Agreements. No modification, amendment, or waiver of any provision of, or consent to any action under, this Agreement or the Merchant Security Agreement and Guaranty shall be effective unless the same is in writing and signed by SFSI.

4.2 Assignment. SFSI may assign its rights and/or obligations under this Agreement and/or the Merchant Security Agreement and Guaranty in whole or in part without prior notice to Merchant or any Owner/Guarantor, including, without limitation, its right to receive all or any portion of the Purchased Amount and its obligation to fund all or any portion of the Purchase Price. Merchant acknowledges that, if any such assignment is made, persons other than SFSI may have the right to exercise rights or remedies against Merchant pursuant to this Agreement. Merchant shall not have, and no Owner/Guarantor shall have, the right to assign its rights and/or obligations under this Agreement and/or the Merchant Security Agreement and Guaranty or any interest herein or therein without the prior written consent of SFSI, which consent may be withheld in SFSI's sole discretion.

4.3 Notices. All notices, requests, consent, demands and other communications hereunder and under the Merchant Security Agreement and Guaranty shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement and the Merchant Security Agreement and Guaranty at the addresses set forth in this Agreement and shall become effective only upon receipt.

4.4 Waiver; Remedies. No failure on the part of SFSI to exercise, and no delay in exercising, any right under this Agreement or the Merchant Security Agreement and Guaranty shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement or the Merchant Security Agreement and Guaranty preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder and under the Merchant Security 4.13 Counterparts; Facsimile and PDF Acceptance.

Agreement and Guaranty are cumulative and not exclusive of any remedies provided by law or equity.

4.5 Solicitations. Merchant and each Owner/Guarantor authorize SFSI and its affiliates to communicate with, solicit and /or market to Merchant and each Owner/Guarantor via regular mail, telephone, email and facsimile in connection with the provision of goods or services by SFSI, its affiliates or any third party that SFSI shares, transfers, exchanges, discloses or provides information with and will hold SFSI, its affiliates and such third parties harmless against any and all claims pursuant to the federal CAN-SPAM ACT of 2003 (Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003), the Telephone Consumer Protection Act (TCPA), and any and all other state or federal laws relating to transmissions or solicitations by and any of the methods described above.

4.6 Terminated Merchant File and Match File. Merchant expressly acknowledges that a Terminated Merchant File ("TMF"), or any successor therein, is maintained by MasterCard or VISA containing the business name and names and identification of principals of merchants which have been terminated for one or more of the reasons specified in MasterCard or VISA operating regulations. Such reasons include, but are not limited to, fraud, counterfeit drafts, unauthorized transactions, excessive charge-backs and retrieval requests, money laundering, or where a high security risk exists. MERCHANT ACKNOWLEDGES THAT PROCESSOR AND SFSI ARE REQUIRED TO REPORT THE BUSINESS NAME OF MERCHANT AND THE NAMES AND IDENTIFICATION OF ITS PRINCIPALS TO THE TMF WHEN A MERCHANT IS TERMINATED FOR ONE OR MORE OF THE REASONS SPECIFIED IN MASTERCARD OR VISA OPERATING REGULATIONS. MERCHANT EXPRESSLY AGREES AND CONSENTS TO SUCH REPORTING BY PROCESSOR AND SFSI AND RELEASES EACH FROM ANY DAMAGES FOR DOING SO IN GOOD FAITH.

4.7 Binding Effects; Governing Law, Venue and Jurisdiction. This Agreement and the Merchant Security Agreement and Guaranty shall be binding upon and inure to the benefit of Merchant, each Owner/Guarantor, SFSI and their respective successors and assigns. This Agreement and the Merchant Security Agreement and Guaranty shall be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable conflicts of law principles. Any suit, action or proceeding arising hereunder or under the Merchant Security Agreement and Guaranty, or the interpretation, performance or breach hereof or thereof, shall, if SFSI so elects, be instituted in any court sitting in New York, New York, (the "Acceptable Forum"). Each of Merchant and each Owner/Guarantor agrees that any state or federal court sitting in the Acceptable Forum is convenient to it, hereby irrevocably and unconditionally submits to the personal jurisdiction of any such court and hereby waives any and all objections to jurisdiction or venue. Each of Merchant and each Owner/Guarantor agrees that a final judgment in any such suit, action or proceeding brought in any such court shall be conclusive and binding upon such party and may be enforced in any other courts to whose jurisdiction such party is or may be subject, by suit upon such judgment. Should such suit, action or proceeding be initiated in any other forum, Merchant and each Owner/Guarantor waive any right to oppose any motion or application made by SFSI to transfer such suit, action or proceeding to the Acceptable Forum.

4.8 Survival of Representation, etc. All representations, warranties and covenants herein and in the Merchant Security Agreement and Guaranty shall survive the execution and delivery of this Agreement

and the Merchant Security Agreement and Guaranty and shall continue in full force until all obligations under this Agreement and the Merchant Security Agreement and Guaranty shall have been satisfied in full and this Agreement and the Merchant Security Agreement and Guaranty shall have terminated.

4.9 Severability. In case any of the provisions in this Agreement or the Merchant Security Agreement and Guaranty is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein or therein shall not in any way be affected or impaired.

4.10 Entire Agreement. Any provision hereof or of the Merchant Security Agreement and Guaranty prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof or thereof. This Agreement and the Merchant Security Agreement and Guaranty embody the entire agreement between Merchant, each Owner/Guarantor and SFSI and supersede all prior agreements and understandings relating to the subject matter hereof.

4.11 JURY TRIAL WAIVER. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THIS AGREEMENT OR THE MERCHANT SECURITY AGREEMENT AND GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY OR THE ENFORCEMENT HEREOF OR THEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY, VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH ITS ATTORNEYS.

4.12 CLASS ACTION WAIVER. THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST ANY OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW. TO THE EXTENT ANY PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST ANOTHER PARTY, THE PARTIES HERETO AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOTWITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT OR THE MERCHANT SECURITY AGREEMENT AND GUARANTY; AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

INITIALS: _AA_

This Agreement and the Merchant Security Agreement and Guaranty may be executed in counterparts, each of which shall constitute an original, but all of which together shall constitute one instrument. Signatures on this Agreement and the Merchant Security Agreement and Guaranty sent by facsimile or PDF will be treated as original signatures for all purposes.

INITIALS: _Ad._

### STRATEGIC FUNDING SOURCE, INC - MERCHANT SECURITY AGREEMENT AND GUARANTY

Merchant's Legal Name: Bernard's of Marlton LLC     D/B/A: Bernard's Salon & Spa (Marlton)

Physical Address: 795 East Route 70     City: Marlton    State: NJ    Zip: 08053

Federal ID# Redacted

#### SECURITY AGREEMENT

**Security Interest.** To secure Merchant's payment and performance obligations to SFSI under the Merchant Cash Advance Agreement between Merchant and SFSI (the "Merchant Agreement"), Merchant hereby grants to SFSI a security interest in all personal property of Merchant, including all accounts, chattel paper, deposit accounts, documents, equipment, general intangibles, instruments, inventory, or investment property, as those terms are defined in Article 9 of the Uniform Commercial Code of the State of New York as amended (the "UCC"), whether now or hereafter owned or acquired by Merchant and wherever located; and all proceeds of such property, as that term is defined in Article 9 of the UCC (collectively, the "Collateral").

**Cross-Collateral.** To secure Guarantor's payment and performance obligations to SFSI under this Merchant Security Agreement and Guaranty (this "Agreement"), each Guarantor hereby grants SFSI a security interest in ___ b2 Salon, LLC (d/b/a b2 Salon (Egg Harbor)), b2 Salon, LLC (d/b/a b2 Salon (Haddonfield)), b2 Salon, LLC (d/b/a b2 Salon (South Broad)), Lexxa, Inc (d/b/a Bernard's Salon & Spa (Cherry Hill)) ___ (the "Additional Collateral"). Each Guarantor agrees and acknowledges that SFSI will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement.

Each of Merchant and each Guarantor agrees to execute any documents or take any action in connection with this Agreement as SFSI deems necessary to perfect or maintain SFSI's first priority security interest in the Collateral and Additional Collateral, including the execution of any control agreements. Each of Merchant and each Guarantor hereby authorizes SFSI to file any financing statements deemed necessary by SFSI to perfect or maintain SFSI's security interest, which financing statements may contain notification that Merchant and each Guarantor have granted a negative pledge to SFSI with respect to the Collateral and Additional Collateral, and that any subsequent lienor may be tortiously interfering with SFSI's rights. Merchant and each Guarantor shall be jointly and severally liable for and shall pay to SFSI upon demand all costs and expenses, including but not limited to attorneys' fees, which may be incurred by SFSI in protecting, preserving and enforcing SFSI's security interest and rights.

**Negative Pledge.** Each of Merchant and each Guarantor agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien or other encumbrance on or with respect to any of the Collateral or Additional Collateral, as applicable.

**Consent to Enter Premises and Assign Lease.** SFSI shall have the right to cure Merchant's default in the payment of rent for the Premises on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, SFSI may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that SFSI may enter into an agreement with Merchant's landlord giving SFSI the right: (a) to enter the Premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and (b) to assign Merchant's lease to another qualified merchant capable of operating a business comparable to Merchant's at the Premises.

**Remedies.** Upon any Event of Default, SFSI may pursue any remedy available at law (including those available under the provisions of the UCC) or in equity to collect, enforce, or satisfy any obligations then owing to SFSI, whether by acceleration or otherwise.

#### GUARANTY

**Performance Guaranty.** Each undersigned Guarantor ("Guarantor") hereby unconditionally guarantees to SFSI the payment and performance by Merchant of all of its obligations under this Agreement and the Merchant Agreement, as each agreement may be renewed, amended, extended or otherwise modified from time to time (the "Guaranteed Obligations"). Guarantor shall be liable for and SFSI may charge and collect all costs and expenses, including but not limited to attorneys' fees, which may be incurred by SFSI in connection with the collection of any or all of the Guaranteed Obligations from Guarantor or the enforcement of this Agreement.

**Guarantor Waivers.** In the event that Merchant fails to make a payment when due or otherwise perform under the Merchant Agreement, SFSI may enforce its rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral SFSI may hold pursuant to this Agreement or any other guaranty.

SFSI does not have to notify Guarantor of any of the following events and Guarantor will not be released from any of its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay timely any amount owed under the Merchant Agreement; (ii) any material or adverse change in Merchant's financial condition or business operations; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations, including without limitation the Collateral and Additional Collateral, or any other guarantee of the Guaranteed Obligations; (iv) SFSI's acceptance of this Agreement; or (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to SFSI. In addition, SFSI may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement : (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to SFSI; (ii) release Merchant from its obligations to SFSI; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations, including without limitation the Collateral or Additional Collateral, in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Purchased Amount and Merchant's other obligations to SFSI under the Merchant Agreement and this Agreement are paid and performed in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation ; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that SFSI must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount. Guarantor agrees that its obligations under this Agreement shall be irrevocable and shall be unconditional irrespective of any circumstance that might otherwise operate as a legal or equitable discharge of a guarantor or a defense of a guarantor.

**Guarantor Acknowledgement.** Guarantor acknowledges that: (i) he/she understands the seriousness of the provisions of this Agreement and that any misrepresentation may constitute fraud; (ii) he/she has had a full opportunity to consult with counsel of his/her choice; and (iii) he/she has consulted with counsel of his/her choice or has decided not to avail himself/herself of that opportunity.

**Joint and Several Liability.** The obligations hereunder of each Guarantor are joint and several.

INITIAL:

Page 6 of 7

2011-Sep-20 10:46 AM lexxa inc 8564897699                                    8/19

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT CASH ADVANCE AGREEMENT", INCLUDING THE "MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS AGREEMENT. CAPITALIZED TERMS NOT DEFINED IN THIS AGREEMENT SHALL HAVE THE MEANINGS SET FORTH IN THE MERCHANT CASH ADVANCE AGREEMENT, INCLUDING THE MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS.

MERCHANT #1
By Anthony Rossano Jr.
                (Print Name and Title)                    (Signature)                    Sign Here
SS# Redacted                          Drivers License Number: Redacted

MERCHANT #2
By _____
                (Print Name and Title)                    (Signature)                    Sign Here
SS#                                   Drivers License Number:

OWNER/GUARANTOR #1
By Anthony Rossano Jr.
                (Print Name and Title)                    (Signature)                    Sign Here
SS# Redacted                          Drivers License Number: Redacted

OWNER/GUARANTOR #2
By _____
                (Print Name and Title)                    (Signature)                    Sign Here
SS#                                   Drivers License Number:

Page 7 of 7

# Exhibit J

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER** [optional]
Phone:(800) 331-3282  Fax: (818) 662-4141

**B. SEND ACKNOWLEDGEMENT TO:** (Name and Address)

20385 STRATEGIC FUND

CT Lien Solutions          25001731
P.O. Box 29071
Glendale, CA 91209-9071    NJNJ

AUG 25 2010

25744309

| 1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names | | | | | |
|---|---|---|---|---|---|
| **1a. ORGANIZATION'S NAME** Bernard's of Marlton LLC | | | | | |
| **1b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | | **MIDDLE NAME** | | **SUFFIX** |
| **1c. MAILING ADDRESS** 795 East Route 70 | **CITY** Marlton | | **STATE** NJ | **POSTAL CODE** 08053 | **COUNTRY** USA |
| **1d. SEE INSTRUCTIONS** | **ADD'L INFO RE ORGANIZATION DEBTOR** | **1e. TYPE OF ORGANIZATION** LLC | **1f. JURISDICTION OF ORGANIZATION** NJ | **1g. ORGANIZATIONAL ID #, if any** | [X] NONE |

| 2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names | | | | | |
|---|---|---|---|---|---|
| **2a. ORGANIZATION'S NAME** Bernard's Salon & Spa | | | | | |
| **2b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | | **MIDDLE NAME** | | **SUFFIX** |
| **2c. MAILING ADDRESS** 795 East Route 70 | **CITY** Marlton | | **STATE** NJ | **POSTAL CODE** 08053 | **COUNTRY** USA |
| **2d. SEE INSTRUCTIONS** | **ADD'L INFO RE ORGANIZATION DEBTOR** | **2e. TYPE OF ORGANIZATION** DBA | **2f. JURISDICTION OF ORGANIZATION** NJ | **2g. ORGANIZATIONAL ID #, if any** | [X] NONE |

| 3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b) | | | | | |
|---|---|---|---|---|---|
| **3a. ORGANIZATION'S NAME** Strategic Funding Source, Inc. | | | | | |
| **3b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | | **MIDDLE NAME** | | **SUFFIX** |
| **3c. MAILING ADDRESS** 1501 Broadway, Suite 360 | **CITY** New York | | **STATE** NY | **POSTAL CODE** 10036 | **COUNTRY** USA |

**4.** This FINANCING STATEMENT covers the following collateral:

Accounts, accounts receivable, contracts, real property leases, notes, bills, acceptances, chooses in action, chattel paper, instruments, documents and other forms of obligations at any time owing to the Grantor arising out of goods sold or leased or for services rendered by Grantor, the proceeds thereof and all of Grantor's rights with respect to any goods represented thereby, whether or not delivered, goods returned by customers and all rights as an unpaid vendor or lienor, including rights of stoppage in transit and of recovering possession by proceedings including replevin and reclamation, together with all customer lists, books and records, ledger and account cards, computer tapes, software, disks, printouts and records, whether now in existence or hereafter created, relating thereto (collectively referred to hereinafter as "Receivables"); Inventory, including without limitation, all goods manufactured or acquired for sale or lease, and any piece goods, raw materials, work in process and finished merchandise, findings or component materials, and all supplies, goods, incidentals, office supplies, packaging materials and any and all items used or consumed in the operation of the business of Grantor or which may contribute to the finished product or to the sale, promotion and shipment thereof, in which Grantor now or at any time hereafter may have an interest, whether or not the same is in transit or in the constructive, actual or exclusive occupancy or possession of Grantor or is held by Grantor or by others for Grantor's account (collectively referred to hereinafter as "Inventory"); Goods, including without limitation, all machinery, equipment, parts, supplies, apparatus, appliances, tools, fittings, furniture, furnishings, fixtures and articles of tangible personal property of every description now or hereafter owned by the Grantor or in which Grantor may have or hereafter acquire any interest, at any location (collectively referred to hereinafter as "Equipment"); General intangibles in which the Grantor now has or hereafter acquires any rights, including but not limited to, causes of action, corporate or business records, inventions, designs, patents, patent applications, trademarks, trademark registrations and applications therefor, goodwill, trade names, trade secrets, trade processes, copyrights, copyright registrations and applications therefor, licenses, permits, franchises, customer lists, computer Continued on addendum.

| 5. ALTERNATIVE DESIGNATION (if applicable) | [ ] LESSEE/LESSOR | [ ] CONSIGNEE/CONSIGNOR | [ ] BAILEE/BAILOR | [ ] SELLER/BUYER | [ ] AG. LIEN | [ ] NON-UCC FILING |
|---|---|---|---|---|---|---|
| **6.** [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | **7.** Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | [ ] All Debtors | [ ] Debtor 1 | [ ] Debtor 2 |
| **8.** OPTIONAL FILER REFERENCE DATA 25001731 | | 13864 | | | | |

ACKNOWLEDGMENT COPY - NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Prepared by CT Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

# FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| | |
|---|---|
| 9a. ORGANIZATION'S NAME | |
| OR | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |

**10. MISCELLANEOUS**

25001731-NJ-0

20385 STRATEGIC FUND

File with:  New Jersey       13864

*5144309    900*

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names**

| | | | | |
|---|---|---|---|---|
| 11a. ORGANIZATION'S NAME | | | | |
| OR 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 11d. SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | □ NONE |

**12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P's NAME - insert only one name (12a or 12b)**

| | | | | |
|---|---|---|---|---|
| 12a. ORGANIZATION'S NAME | | | | |
| OR 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral or is filed as a ☐ fixture filing

**14.** Description of real estate:

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**16.** Additional collateral description:

programs, all claims under guaranties, tax refund claims, rights and claims against carriers and shippers, leases, claims under insurance policies, all rights to indemnification and all other intangible personal property and intellectual property of every kind and nature (collectively referred to hereinafter as "Intangibles"); All the capital stock, bonds, notes, partnership interests, member interests in limited liability companies, and other securities, if any, held of record or beneficially by the Grantor, including without limitation the capital stock of all subsidiaries of the Grantor, and the Grantor's interests in all securities brokerage accounts (collectively referred to hereinafter as "Investments"); All cash on hand and on deposit in banks, trust companies and similar institutions, and all property accounted for in the Grantor's financial statements as "cash equivalents" (collectively referred to hereinafter as "Cash"); All accessions to, substitutions for and all replacements, products and proceeds of the Receivables, Inventory, Equipment, Intangibles, Investments and Cash (collectively referred to hereinafter as "Collateral", including without limitation proceeds of insurance policies insuring the Collateral; and  Books and records relating to any of the Collateral (including without limitation, customer data, credit files, computer programs, printouts, and other computer materials and records of the Grantor pertaining to any of the

**17.** Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust    or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction
☐ Filed in connection with a Public-Finance Transaction

ACKNOWLEDGMENT COPY - NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/21/09)

Prepared by CT Lien Solutions, P.O. Box 29071
Glendale, CA 91209-9071 Tel (800) 331-3282

# FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION'S NAME

OR

9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX

10. MISCELLANEOUS

25001731-NJ-0

20385 STRATEGIC FUND

File with: New Jersey       13864

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

OR

11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

11d. SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | □ NONE

12. □ ADDITIONAL SECURED PARTY'S  or  □ ASSIGNOR S/P's  NAME - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

OR

12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

13. This FINANCING STATEMENT covers □ timber to be cut or □ as-extracted collateral or is filed as a □ fixture filing.

14. Description of real estate:

16. Additional collateral description:

foregoing).

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.
Debtor is a □ Trust  or  □ Trustee acting with respect to property held in trust  or  □ Decedent's Estate

18. Check only if applicable and check only one box.
□ Debtor is a TRANSMITTING UTILITY
□ Filed in connection with a Manufactured-Home Transaction
□ Filed in connection with a Public-Finance Transaction

ACKNOWLEDGMENT COPY - NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/21/09)

Prepared by CT Lien Solutions, P.O. Box 29071
Glendale, CA 91209-9071 Tel (800) 331-3282